JACOB CASTLEBERG *vs.* WHEELER, PARSONS, and HAYES, and others.

*Insolvency proceedings—Appeal—Sec. 13, of Art. 5, of the Code — Exceptions — Practice — Issues — Replication—Reversal—Sec. 24, of Art. 48, of the Code—Act of 1886, ch. 298—What Constitutes Insolvency—Estoppel—Assignment for the Benefit of Creditors.*

On an appeal in a matter of insolvency, no question is open for review in this Court, except such as may be certified in the manner prescribed by law, (Code, Art. 5, sec. 13,) the statute providing that, "no question which shall not appear by such certificate to have been raised in said Court, shall be considered by the Court of Appeals."

A bill of exception regularly signed by the Judge, taken to any particular ruling made in the course of the trial, is a certificate within the object and purview of the statute.

A replication does not seem to be contemplated in insolvent proceedings, either by the terms of the statute or according to any established practice upon the subject. But clear and definite issues in such proceedings, should, in all cases, be framed, based upon the material allegations of fact really involved in the contest. It has been the long established practice in the Courts of this State to frame such issues to be tried by a jury.

The failure, in proceedings in insolvency, to have issues framed to be tried by the jury, as contemplated by section 24, of Article 48, of the Code, as amended and re-enacted by the Act of 1886, ch. 298, furnishes no ground for a reversal in the Appellate Court, it not appearing that the objection was made in the Court below.

The terms '"any person being insolvent, or in contemplation of insolvency" must be taken to mean, when applied to traders and merchants and others of the classes mentioned in sec. 13, of Art. 48, of the Code, as re-enacted by the Act of 1886, ch. 298, an inability of the debtor, to pay his debts as they become due in the ordinary course of business.

And any transfer of such debtor, being then actually insolvent, or contemplating such state of insolvency, with a view to secure his

Castleberg *vs.* Wheeler, *et al.*

property, or any part of it, to one or more creditors, and thus prevent an equal distribution among all his creditors, is a transfer in fraud of the insolvent law.

Where instructions were granted directing the jury upon a certain hypothesis in each to find for the petitioner in proceedings in involuntary insolvency, and there was error in one of those instructions, yet if by the finding of the jury upon any of the other issues, acts of insolvency were found against the defendant, the judgment of the Court declaring the defendant an insolvent, will be sustained.

If the defendant in a proceeding to have him declared an insolvent, be actually insolvent at the time of making payments and giving preferences, such payments are fraudulent as against the insolvent law, notwithstanding he may have honestly believed he would be able to go on in business, and with such belief paid the debts without a design to give a preference.

Where a defendant in insolvency, shortly before the institution of the insolvent proceedings, made a general assignment to a trustee for the benefit of creditors; the fact that the petitioning creditors filed their claims to get distribution of the trust fund under the deed, does not estop them from taking proceedings in insolvency against the assignor.

As long as the deed of assignment stands, it is effectual to transfer the assets to the trustee therein named, and the creditors one and all, have a right to receive their just proportions of the fund, according to the terms of the assignment.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception:*—The petitioners offered the three following prayers, numbered two, three and four :

2. That if the jury find that within four months prior to the institution of this suit, to wit, prior to the 12th day of January, 1887, the defendant made way with any of his money or property, by assignment, sale, gift, conveyance or transfer in any way, with intent to delay, hinder or defraud his creditors, their verdict must be for the plaintiffs upon the second issue. And if the jury believe that any

of the defendant's property or money was, within the time aforesaid, withdrawn from the reach of his creditors, with intent to defraud them by the act, or with the knowledge and consent of the defendant, their verdict must be for the plaintiffs on the second issue.

3. That if the jury find that the defendant had been for many years before the institution of these proceedings, a merchant or trader in the City of Baltimore, and that within four months before the institution of these proceedings against him, on the 12th day of January, 1887, the defendant was unable to pay his debts as they became due, in the ordinary course of business, then they must find that the defendant was insolvent, or in contemplation of insolvency at the time, that he was so unable to pay his debts in the ordinary course of business, and that any payment, gift, transfer or delivery of any money or other property made by the defendant to any of the persons named in the petition, within four months before the 12th of January, 1887, while he was unable to pay his debts in the ordinary course of business, is evidence from which the jury must find that such payment, gift, transfer or delivery of money or other property, was made with intent to make an illegal preference in favor of the creditors to whom such payment, gift, transfer or delivery was made, and their verdict must be for the plaintiffs on the fourth issue of the petition, unless the defendant shall satisfy them that such payments, gifts or transfers of money, or other property, made by him within four months before the 12th of January, 1887, were made by him in good faith and in honest ignorance that such payments, gifts or transfers of money or other property, would prevent him from making an equal payment of his debts among all his creditors, and with no intention to prefer the creditors to whom such gift, payment or transfer was made, over his other creditors.

4. That if the jury find that the defendant had been for many years before the institution of these proceedings, a

Castleberg *vs.* Wheeler, *et al.*

merchant or trader in the City of Baltimore, and that within four months before the institution of these proceedings against him, on the 12th day of January, 1887, the defendant was unable to pay his debts as they became due in the ordinary course of business, then they must find that the defendant was insolvent or in contemplation of insolvency at the time that he was so unable to pay his debts in the ordinary course of business, and that any payment, gift, transfer or delivery of any money or other property, made by the defendant to any of the persons named in the petition within four months before the 12th of January, 1887, while he was unable to pay his debts in the ordinary course of business, is evidence from which the jury must find that such payment, gift, transfer or delivery of money or other property, was made with intent to make an illegal preference in favor of the creditors to whom such payment, gift, transfer or delivery was made, and their verdict must be for the plaintiffs on the fourth issue of the petition, unless the defendant shall satisfy them that such payments, gifts or transfers of money or other property, made by him within four months before the 12th of January, 1887, were made by him in good faith, and in honest ignorance that such payments, gifts or transfers of money or other property would prevent him from making an equal payment of his debts among all his creditors, and with no intention to prefer the creditors to whom such gift, payment or transfer was made over his other creditors.

To these prayers the defendant made the following special exceptions :

The defendant excepts to the language of the second prayer of the plaintiffs, because there is no provision in the law relating to insolvency, referring to the "making away" of property by the defendant, nor is there any such allegation in the petition.

The defendant excepts to the plaintiffs' third prayer, because there is no allegation in the petition charging the

defendant, as a merchant or trader, nor any issue of fact arising out of such allegations, and there is no evidence that prior to the transactions referred to in the prayer, he was not able to pay his debts as they became due.

The defendant excepts to the plaintiffs' fourth prayer, because the names of the creditors, to which the prayer refers, are not inserted in the allegation of the petition.

And the defendant offered the three following prayers, numbered four, five and six.

4. That in order to find for the petitioners on the fourth issue, they must find that the defendant, while insolvent and in contemplation of insolvency, within four months prior to the filing of the petition, executed a deed of conveyance, giving preferences, or created a lien, making unlawful preferences or otherwise giving such preferences, in favor of Nathan Lehman, named in the petition, with the intention and for the purpose of giving a preference and making a preference.

5. That though they may find from the evidence that at the time, within four months prior to the filing of the petition, when Castleberg paid any of the parties named in the third issue any sums of money due them, insolvency actually existed, yet if Castleberg honestly believed he would be able to go on in business, and with such belief he paid such debts (if the jury find such debts to have been owing) without a design to give a preference, such payments are not fraudulent under the Insolvent Laws of Maryland, and the defendant is entitled to their verdict on said issue.

6. If the jury find from the evidence in the case, that Jacob Castleberg executed, on or about the 28th of Dec., 1886, to Thomas Hughes, trustee, a deed of trust, conveying all his property to him for the benefit of his creditors, without preference, and that the petitioning creditors filed their claims in the Circuit Court for a dividend from said estate, then they are precluded from the position of peti-

tioning creditors under the Insolvent Laws, and the verdict of the jury must be for the defendant.

The Court (BROWN, C. J.,) granted the said prayers of the petitioners and rejected those of the defendant.

The defendant excepted. On the verdict of the jury, the Court adjudged the defendant to be an insolvent debtor. From the order adjudging the defendant an insolvent this appeal was taken.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Wm. Pinkney Whyte,* for the appellant.

*Charles Marshall,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

The appeal here is from the rulings of the Court of Common Pleas of Baltimore City, in a proceeding of involuntary insolvency. And being an appeal in a matter of insolvency, no question is open for review in this Court, except such as may be certified in the manner prescribed by law, (*Code, Art.* 5, *sec.* 13,) the statute providing that "no question which shall not appear by such certificate to have been raised in said Court shall be considered by the Court of Appeals." A bill of exception, however, regularly signed by the Judge, taken to any particular ruling made in the course of the trial, is a certificate within the object and purview of the statute.

It appears that certain creditors of Jacob Castleberg, a merchant doing business in the City of Baltimore, filed their petition against him, under the provisions of the Act of 1886, ch. 298, to have him adjudicated an insolvent under that statute. In the petition it is alleged that the defendant was a merchant in the City of Baltimore, and, by separate paragraphs, the petitioners charged the commis-

sion, by the defendant, of several acts of insolvency, within the terms of the statute. Referring only to those paragraphs by number that appear to be material to the questions on this appeal, the petitioners charged—

2. That Castleberg, the defendant, had, within four months before the filing of the petition, assigned, given, sold, conveyed and transferred a part of his estate, with intent to delay, hinder and defraud the petitioners and his other creditors.

3. In this paragraph the same charge as that in paragraph 2 is repeated, with a specification of the persons to whom the defendant had "assigned, given, sold and transferred" his property, with intent to hinder, delay and defraud the petitioners, and his other creditors, while he was insolvent, and in contemplation of insolvency.

4. That the defendant, being insolvent, and in the contemplation of insolvency, had, within the time aforesaid, conveyed and paid away part of his property and assets to various persons to whom he was indebted, to wit, Nathan Lehman, and to some or all the persons named in the preceding paragraph, with the intention and for the purpose of giving and making unlawful preferences among his creditors.

In the answer of the defendant, he admitted that the petitioners were his creditors to an amount more than sufficient to entitle them to take the proceedings against him. But he denied the various acts of insolvency charged against him; and in the answer he required that the issues of fact, which arose upon the petition and answer, should be tried by a jury. After filing the answer and making the demand for a jury trial, but before the case was called for trial, the defendant moved the Court to dismiss the proceedings in the cause, because there was no replication filed to the answer of the defendant. This motion the Court overruled; and the case proceeded to trial. The jury, by their verdict, found for the defendant on

the first issue; and, on the second, third and fourth issues, they found for the petitioners. And upon this finding the Court adjudicated the defendant an insolvent.

Much of the argument, in this Court, on the part of the appellant, was addressed to the question of the supposed illegality of the proceedings of the Court below. It is contended that the motion to dismiss the proceedings for want of a replication ought to have prevailed; that there were no such issues formed as could be fairly tried by a jury; and that, by reason of the omission to frame such proper issues of fact as could be passed upon by a jury, there was a mistrial.

We do not think the Court was in error in refusing to dismiss the proceedings for want of replication. A replication does not seem to be contemplated in insolvent proceedings, either by the terms of the statutes, or according to any established practice upon the subject. We are of opinion, however, that clear and definite issues should, in all cases, be framed, based upon the material allegations of fact really involved in the contest. By framing such issues, the material is separated from the immaterial matters alleged, and the verdict rendered upon such issues is made intelligible, as to the special facts found or not found to exist. To frame such issues to be tried by a jury, has been the long established practice in the Courts of this State.

By the Act of 1805, ch. 110, sec. 9, it was provided that when allegations were filed against an applicant for the benefit of the insolvent law, charging fraud or undue preferences, the creditor could either examine the applicant upon interrogatories, or, upon request, the Court was required to direct an issue or issues, in a summary way, without the form of an action, to determine the truth of the allegations; which issues were to be tried by a jury. The same provision, substantially, has been incorporated into all subsequent insolvent systems adopted in this State.

It was incorporated into the Act of 1854 ; and, in section 19 of article 48 of the Code, still in force as part of our present insolvent system, it is provided that the creditor, making allegations against the applicant, " may have an issue *made* and tried by a jury." And in reference to this last provision, the Court of Appeals, in *Jaeger vs. Requardt*, 25 *Md.*, 232, said that, upon allegations filed, the simple duty of the Court was to direct the framing of issues, and to determine whether the facts presented, if found by the jury, would convict the applicant of a violation of the insolvent law.

In view of this long established practice, it can hardly be doubted that the same course of practice was contemplated by the Legislature, in the enactment of section 24, of Article 48 of the Code, by the Act of 1886, ch. 298, whereby it is declared, that "upon *any issue of fact* which may arise out of said petition and answer, either party shall be entitled to a trial by jury ; but the parties to said cause may waive the jury trial and be heard by the Court on the issue in fact," etc. There can be no good or sensible reason suggested why the mode of procedure under section 24 of Article 48 should be different and less precise and certain than the mode of procedure under section 19 of that Article.

But, however irregular the mode of proceeding in this case may have been, such irregularities are not presented in a form to justify this Court in making them the ground of reversal. It does not appear that any objection was made to swearing the jury, upon the ground that no issues had been framed ; and if such objection had been made and overruled, such ruling should have been made the subject of an exception. Under the statute allowing appeals in such cases, no question can be entertained in this Court to affect the judgment of the Court below, unless it be certified as the statute directs.

There is but one exception in the record, and that was taken to the rulings upon the prayers that were offered for

instruction to the jury. The questions raised by those prayers are the only questions open on this appeal.

Before proceeding to notice the prayers, it is necessary, to a proper understanding of the positions taken by the parties, that we advert to the provisions of the statute in reference to which the prayers were drawn. That statute is the Act of 1886, ch. 298, passed to repeal and re-enact certain sections of Article 48 of the Code, with amendments.

Section 13, as thus re-enacted, has application only to persons engaged in certain designated business pursuits, and is intended to declare the legal effect and operation of certain acts and transactions of such parties, they being at the time either actually insolvent, or in contemplation of insolvency.

By the common law, transfers, conveyances and charges, by a debtor to or in favor of *bona fide* creditors, are valid, though the debtor may be at the time, or intends soon to become, utterly insolvent, and makes the transfer or creates the charge for the sole purpose of giving a preference over his other creditors, who may not be able to realize any part of their claims. This right by the common law, so often abused to the prejudice of all but a few favorite creditors, it was the purpose of the Legislature, by this section 13, to restrain, as to the class of persons mentioned. Hence this section 13 provides, that "No deed or conveyance executed, or lien created, by any banker, stock-broker, merchant, manufacturer or trader, *being insolvent*, or *in contemplation of insolvency*, shall be lawful or valid, if the same shall contain any preferences, save such as result from operation of law, and save those for wages or salaries to clerks, &c.; and all preferences, with the exception aforesaid, *shall be void, howsoever the same may be made;* provided, the grantor or party creating said lien or preference shall be proceeded against under section 24, or shall apply for the benefit of this Article under section

1, within four months after the recording of the deed or conveyance, or the creation of said lien or preference, and shall be declared, or shall become, under the provisions of this Article, an insolvent." Of course, such conveyances and transfers as are here provided against, if in all other respects valid, are perfectly good, if the debtor be not proceeded against, or he does not become an applicant, under the insolvent law, within the time prescribed, and is not declared an insolvent.

Section 23 of Article 48 of the Code, as re-enacted by the Act of 1886, ch. 298, declares what acts of the debtor shall constitute acts of insolvency, to entitle creditors to have him declared an insolvent in adverse proceedings. By that section it is provided, that *any person* (1) who shall depart from or remain absent from this State, with intent to hinder, delay or defraud his creditors, or conceal himself to avoid service upon him of legal process; (2) and *any person* who conceals or removes any of his property to prevent the same from being taken under legal process; (3) or makes any assignment, gift, sale, conveyance or transfer of all or part of his property, with the intent to delay, hinder or defraud his creditors; (4) or, belonging to any of the classes mentioned in section 13, when insolvent, or in contemplation of insolvency, executes a deed or conveyance giving preferences, creates a lien making any unlawful preferences as therein stated, or otherwise gives such preferences; (5) or, belonging to said last-mentioned classes, when insolvent, or in contemplation of insolvency, confesses any judgment or allows any judgment to be entered against him by any connivance; (6) or, belonging to any of said classes, when insolvent or in contemplation of insolvency, fraudulently stops payment, or suspends payment of his negotiable paper, and fails to resume the payment thereof within twenty days; (7) or, being a banker or broker, shall fail for twenty days to pay any depositor on demand lawfully made, *shall be deemed to*

Castleberg *vs.* Wheeler, *et al.*

*have committed an act or acts of insolvency,* provided the petition be filed within four months after such acts committed.

Upon the commission by the debtor of any of the various acts of insolvency enumerated in this section, it becomes the absolute right of the creditor to place the debtor in insolvency, and to have his affairs and assets administered according to the principles that govern insolvent Courts, the leading one of which is *equality* among all the creditors.

What constitutes *insolvency,* within the meaning of sections 13 and 23, is a question in regard to which there has been some diversity of opinion. But, accepting the definition of the Supreme Court of the United States, in construing section 35 of the bankrupt Act of 1867, in which the terms "any person, being insolvent, or in contemplation of insolvency," are employed, as denoting the state or condition of the party whose acts are the subject of inquiry, those terms must be taken to mean, when applied to traders and merchants, and others of the classes mentioned in section 13, an inability of the debtor to pay his debts, as they become due, *in the ordinary course of business.* And any transfer of such debtor, being then actually insolvent, or contemplating such state of insolvency, with a view to secure his property, or any part of it, to one or more creditors, and thus prevent an equal distribution among all his creditors, is a transfer in fraud of the insolvent law. *Toof vs. Martin,* 13 *Wall.,* 40 ; *Buchanan vs. Smith,* 16 *Wall.,* 277 ; *Wager vs. Hall, Id.,* 584.

With this reference to the law, we may now examine the prayers that were offered in the Court below. There is not the slightest ground for question, but that the evidence was legally sufficient to be submitted to the jury, to support the hypotheses of the instructions that were granted by the Court.

Of the prayers granted on the part of the petitioners, the second, third and fourth are before us for review.

The first clause of the second prayer is based upon that provision of section 23 of the statute, which forbids the making of any assignment, gift, sale, conveyance or transfer of property, with the intent to delay, hinder, or defraud creditors. This clause of the prayer is entirely correct, notwithstanding the use of the terms, "made way with;" for those terms must be read and understood in connection with the terms that follow. But the second clause of this prayer is not correct, because it does not appear to be within any issue on trial, if we may gather from the pleadings what the issues were. By this instruction the jury were directed, "that if any of the defendant's property or money was, within the time aforesaid, *withdrawn from the reach* of his creditors, with intent to defraud them by the act, or with the knowledge or consent of the defendant, their verdict must be for the petitioners *on the second issue.* There is no allegation by the petitioners that the property of the debtor had been concealed or removed to prevent the same from being taken under legal process; and the second issue, as we make it out from the petition, did not embrace any such inquiry. But, notwithstanding this error in the second instruction, if by the finding of the jury upon any of the other issues, acts of insolvency were found against the defendant, there was sufficient ground for the judgment of the Court, declaring the defendant an insolvent.

The third prayer granted by the Court had reference to and was based upon that provision of the statute defining acts of insolvency by merchants and others, designated in section 13 as special classes, and as against whom it is necessary to find that the act done, as an act of insolvency, was done when the party was insolvent, or contemplated insolvency. This instruction was intended as a guide to the jury in their finding upon the fourth issue, and that

issue was found for the petitioners. And it is not perceived that there is anything in this instruction of which the defendant can complain. It was certainly as liberal to the defendant as he could ask it to be ; and the facts put to the jury to find made a case fully within the terms of the statute. The fourth prayer seems to be substantially the same as the third, and there was no error in granting it.

The three prayers on the part of the defendant, designated as the fourth, fifth and sixth, were rejected by the Court, and they are presented by the record for review. But we think them all plainly objectionable, and that the Court committed no error in rejecting them.

The first of these prayers is objectionable, because it asked that the jury be instructed that, in order to find for the petitioners on the fourth issue, they must find that the defendant, within the time mentioned and while insolvent, made a deed or created a lien, or otherwise gave an unlawful preference in favor of Nathan Lehman, named in the petition. But Lehman was not the only person mentioned in the fourth issue, treating the fourth paragraph of the petition as the matter referred to as constituting the fourth issue. It is there alleged that undue preferences were given to Lehman, and to some or all of the persons named in the previous paragraph of the petition ; and in the previous paragraph several persons are named.

The second of these prayers is based upon the theory that though the defendant was actually insolvent at the time of making payments and giving preferences, yet if he honestly believed he would *be able to go on in business,* and with such belief he paid the debts without a design to give a preference, such payments were not fraudulent as against the insolvent law, and therefore the verdict should be for him on the *third issue.* But the statute makes no such provision as is made the basis of this prayer. The defendant might have believed himself able to go on in business, with the indulgence of his creditors, though he

might have known himself to be insolvent; and he might be entirely honest in believing that he would be able to relieve himself of embarrassment by future successes. But that condition of things would not deprive the creditors of the right to proceed under the statute. If the party proceeded against belong to any of the classes of persons mentioned in section 13 of the statute, and being insolvent or in contemplation of insolvency, (which means inability to pay debts when due, in the ordinary course of business,) make the transfer or create the lien, which operates to give the preference, he subjects himself to the provisions of the statute.

The next and last of the prayers presents a question of estoppel. The defendant, shortly before the institution of the insolvent proceedings, made a *general* assignment to a trustee for the benefit of creditors; and it is supposed, that because the petitioning creditors filed their claims to get distribution from the trust fund under the deed, they are precluded from taking proceedings in insolvency against the assignor. But we cannot concur in that view. Whether, after committing an act of insolvency, and within the four months preceding the institution of proceedings, any more than after an act of bankruptcy and within the time for taking proceedings, a debtor can make a valid *general assignment* for the benefit of creditors, to a trustee of his own selection, who has no power to question any prior conveyances or preferences given, is a question that we do not now deem it necessary to decide. Under the bankrupt law such general assignment could not be made, to convey the property of the debtor as against the assignee in bankruptcy. *Buchanan vs. Smith,* 16 *Wall.,* 277; *Mayer vs. Hellman,* 91 *U. S.,* 496; *Boese vs. King,* 108 *U. S.,* 379. But here the deed of assignment does not appear to have been assailed, or called in question by any one; and as long as it stands it is effectual to transfer the assets to the trustee therein named; and the creditors, one and all,

have a right to receive their just proportions of the fund, according to the terms of the assignment. *Boese vs. King,* 108 *U. S.,* 386.

Finding no error for which the judgment is liable to reversal, we must affirm it, with costs.

*Judgment affirmed.*

(Decided 6th January, 1888.)