## SUPERIOR COURT OF BALTIMORE CITY.

Filed October 20, 1899.

STROUSE AND BROTHERS
VS.
AMERICAN CREDIT INDEMNITY COMPANY.

*Charles Marshall* and *J. Markham Marshall* for plaintiffs.

*Albert Stickney* and *D. K. Este Fisher* for defendants.

RITCHIE, J.—

Some of the claims set out in the bill of particulars have been modified or withdrawn, but as to all of those on which the plaintiffs now seek to recover, there is evidence tending to show the sales, deliveries, acceptances, rating and insolvency required, and the prayers of the defendant, asking that the case be taken from the jury on the ground that there is no competent evidence in one or all of these respects, will be rejected.

It is necessary therefore to construe the controverted provisions of the bond sued on.

*The Bond.*—The bond of the American Company sued on runs from June 1st, 1893, to May 31st, 1894.

The Certificate No. 1204 of the U. S. Co., referred to in the rider, runs from June 1st, 1892, to May 31st, 1893.

The bond sued on, together with the rider, subject to certain conditions, indemnifies the plaintiffs to the extent of $20,000 against losses by reason of the insolvency of debtors;

First. Which would have been "provable under a renewal of said certificate."

Second. Which otherwise occur during the term of the bond.

*Insolvency.*—Both the bond and certificate were contracts made with merchants, concerned the transactions of merchants, and referred to the insolvency of merchants. The meaning of the term insolvency, therefore, as used in both the bond and certificate, in the absence of anything to limit or define it, and notwithstanding some phraseology in the certificate which, if taken by itself, might indicate the contrary, is insolvency as understood by merchants, and as meant when referred to in bankrupt and insolvent laws. Such insolvency is the inability of the debtor to pay his debts as they become due in the ordinary course of business, and it is not necessary to show the adjudication of a Court, or an absolute inadequacy of assets to meet liabilities.

Castleberg vs. Wheeler, 68 Md. 266.
Mish vs. Main, 81 Md. 43.

Condition 11 A, on the back of the bond, provides that a general assignment and other things mentioned, shall constitute insolvency, that is to say, shall, of themselves, without further proof, establish the fact of insolvency. But there are no words of limitation which would exclude from the operation of the bond, insolvency existing otherwise than in the cases mentioned. In fact condition 11 B provides for proof of insolvency in other cases than those mentioned in 11 A.

To illustrate what the Court means, reference may be made to American Co. vs. Carrollton Co., 95 Fed. Rep. 114, which was a suit against this defendant on its bond dated in 1895. It would seem from that case that this company itself did not put upon condition 11 A, in the bond sued on, the construction now contended for, because it will be seen that this condition was most materially changed by it in bonds after 1893. A comparison of the condition in this bond, with that in its bond of 1895, shows the distinction the Court now draws. In the bond of 1895 insolvency is limited and defined, in this it is not.

*Losses under the Rider.*—The rider provides that losses which would have been provable under a renewal of certificate No. 1204 may be proved under the bond sued on.

Under this certificate shipments and insolvency must both have occurred during its term, but it provides that covered losses, occurring after its expiration, on shipments made during its term, would be provable under a renewal, as if the goods had been shipped under such renewal. That is, if the insolvency occurred during the term of the renewal the loss would be provable, although the shipments had been made during the term of the original certificate.

No loss can be recovered under the rider on this bond, unless it would have been provable under such renewal.

For the definition of a loss provable under the rider, therefore, and for the extent to which provable, we must look to the provisions of the certificate.

Its various conditions as to rating, shipments, amount of sales, excess of credit, prorating payments and so forth,

must be complied with. For instance, if any debtor has been credited in a larger amount than his rating allowed, the excess is not provable; or if the account of any one debtor exceeds the limit of $5,000, the excess is not provable.

When the losses are ascertained within the definition of Certificate No. 1204, they are covered by this bond and may be proved under it. The rider does not provide that these losses are to be *ascertained* by "the terms and conditions of this bond," but only that they may be *so proved*, after being ascertained under the terms of the certificate.

But these renewal losses, when thus brought under the bond, are on the footing of other losses, and are not subject to any other initial loss than the one provided for by this bond. It is true that if there had been a renewal of No. 1204 it would have provided for an initial loss of $6,250; but such a renewal, in addition to these losses covered by the rider, would have covered all other losses for a whole year, and it would be most unreasonable to so construe the contract, as to subject the few losses that thus come within the bond to the initial loss of a renewal certificate.

*The Initial Gross Loss.*—The face of the bond sued on indemnifies the plaintiffs to the extent of $20,000 against loss resulting from insolvency of debtors, over and above a net loss of $7,500, first to be borne by them, on sales amounting to $1,600,000 made during the year.

It is provided by condition 12 A that a certain sum of gross loss, amounting in this case to $10,000, shall be the limit to be borne by the indemnified, and that all claims making up such gross loss shall remain the property of the indemnified. The purpose of this condition seems to be to substitute an agreed amount of gross loss as the equivalent of the net loss, though there is no definition in the bond of either.

It is agreed by counsel on both sides that this condition applies in the adjustment of the liability of the defendant in this case, and the only question argued by them in this connection, is as to the time when this initial gross loss is to be ascertained. I shall therefore consider this question only.

Between the dates of insolvency, or failure, and the date for the adjustment of the liability of the company, payments amounting to some $5,000 were made on several claims, which the plaintiffs now include in their statement of the initial gross loss to be borne by them. The plaintiffs claim that they are not required to account for these intermediate payments. Their contention is, that the whole debt due at the time of the debtor's insolvency, or failure, is the gross loss on any given claim; that when they have thus set aside an aggregate of debts, amounting to $10,000 at the time of the several failures or insolvencies, they have borne their initial gross loss, and are entitled to all subsequent payments made thereon. In other words, that the initial gross loss is to be determined as of the date of failures.

The defendant contends that the time for ascertaining this loss is the time fixed for adjusting the liability of defendant under the bond, and that these claims, on which the plaintiffs have received these intermediate partial payments, cannot be counted in full in making up the loss which they are to bear before the liability under the bond begins. I concur in the view taken by the defendant on this point.

It appears from the condition of the bond that two proofs of loss must be made, on blanks furnished by the company, and in the manner prescribed by it; first, the preliminary proof, within twenty days after knowledge of insolvency; second, the final proof, within twenty days after the expiration of the bond, and the amount "*due under final proof of loss*," is to be adjusted and paid within sixty days after its receipt. It seems clear from this that the adjustment of the liability under the bond is not to be postponed until the ultimate result of all failures is ascertained, but is to be had as of the date of its expiration.

In the preliminary proof the whole amount due on any claim at the time of failure is to be stated; in the final proof, which covers all claims, the indemnified is required, both as to claims which go to make up the initial gross loss, and those which make up the loss which the company must bear, to state again the whole original indebtedness, and also all amounts paid since the date of failure on each claim. The re-

quirements of proof apply to each class of claims. See Jaeckel vs. Om. Cr. Co., 54 N. Y. Supt. 505.

It is conceded that the liability of the company on the excess over the initial loss borne by the indemnified, is reduced by payments made between the date of insolvency and the expiration of the bond, and I think the same rule should apply in ascertaining the initial gross loss. If not, why is the indemnified required to make a statement in his final proof of all payments made on claims which go to make up his initial gross loss? The condition relied on by plaintiffs, which provides that the claims "making up" the initial gross loss, shall remain the property of the indemnified, does not help us to dispose of the point now considered. The question still remains, what claims make up the initial gross loss? This loss must be made up of claims as they exist when it is made up, and so we come back to the question, when is it to be made up?

If the plaintiffs be right, such a case as this may easily be imagined; for instance, early in the year some debtor fails owing the indemnified party $10,000; by the end of the year the whole debt has been paid off; in such a case, under the construction of the plaintiffs, the indemnified would have the right to hold the company for losses in excess of this $10,000, without having himself borne an initial loss of one dollar.

The case put for illustration is not altogether imaginary, nor at all impossible. The very facts suggested hypothetically have actually occurred in the case of one claim involved in this suit. The whole debt due by Mc-Murray at the time of his failure was paid off before the bond expired, and yet the plaintiffs claim that the full amount of this debt should be counted in making up their initial loss, although nothing has been lost on it. I cannot accept a construction that would lead to such a result, nor can I see how condition 12 A operates to fix one time for computing the initial gross loss, when condition 12 C provides another for adjusting the company's liability.

The time for computing the initial gross loss is, in my opinion, the time when the liability under the bond is to be adjusted, that is, as of the date of the expiration of its term, and therefore all these intermediate payments must be deducted.

*The Adjustment of Liability.*—The basis of this adjustment is the aggregate of provable claims as they exist at the time for adjustment. These claims must now be classified into those which make up the initial gross loss, and those which make up the liability of the company, because the bond provides that those which make up this loss shall remain the property of the indemnified, and those making up the liability of the company shall be transferred to it.

The bond does not provide in terms how this classification shall be made, but it does expressly provide that the initial loss shall first be borne by the indemnified, before the liability of the company begins, and the reasonable construction of this is, that this loss which is to be first borne should be made up of losses as they first occurred, or, in other words, of provable claims against the respective debtors in the order in which their failures happened.

It follows that payments made to the plaintiffs since the time for adjustment, on claims making up the initial gross loss, belong to plaintiffs (see Condition 12 A and 54 N. Y. S., supra); those on claims making up the liability of the company belong to the company under and subject to Condition 12 B, and must now be deducted therefrom.

*The Transactions of May 17th, 1892.*—These were prior to the date of Certificate No. 1204, but they were not "sales" within the meaning of the contract. They were simply orders for goods not yet manufactured, for the fall trade, which were not, and were not intended to be, shipped or charged up until fall, and therefore are not to be thrown out.

*The Lannon Claim.*—To the questions in the preliminary proof as to the time and nature of failure, the answer is "died." The death of the debtor of course does not establish insolvency, but I think this claim is within Condition 11 B, and Am. Cr. Co. vs. Wood, 73 Fed. R. 81, and that the plaintiffs may now prove that Lannon died insolvent.

*Settlements.*—I will allow the evidence on them to go to the jury for

their consideration under the plaintiffs' 5th prayer.

*Extensions.*—There is no evidence that any claim was "under extension" within the meaning of the rider.

The views expressed require me to reject nearly all the prayers on each side. This would leave the jury practically without instructions, and therefore, if the plaintiffs will prepare instructions in accordance with this opinion, I will give them as the instructions of the Court, reserving to the plaintiffs the right to except to them.