## MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. v. HARRY LIBOWITZ ET AL.

[No. 33, January Term, 1930.]

*Decided March 14th, 1930.*

The cause was argued before BOND, C. J., URNER, ADKINS, DIGGES, PARKE and SLOAN, JJ.

*Allen A. Davis,* with whom was *A. Walter Kraus* on the brief, for the appellants.

*Charles C. Wallace,* with whom were *William P. Cole, Jr.,* and *Samuelson & Robinson,* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

As the statute enacted in the matter of removal of causes is in harmony with the terms of the Constitution (Code, art. 75, secs. 109-111; art. 5, sec. 27; art. 24, sec. 1; *Fountain v. State,* 135 Md. 87, 91), the question on this appeal is whether a petition for a writ of mandamus can be removed for trial under the provisions of the Constitution on that subject.

The original Constitution of the State of Maryland contained no provision for the removal of a pending litigation from one court to another for trial until an amendment, which was submitted by chapter 55 of the Acts of 1804, entitled "An Act to provide for the trial of facts in the several counties of this State, and to alter, change and abolish all such parts of the Constitution and form of government as relate to the general court and Court of Appeals," became a part of the Constitution by the ratification of the succeeding General Assembly. Acts of 1805, ch. 16. The relevant portion of the amendment is the second section: "Sec. 2. In any suit or action at law hereafter to be commenced or instituted in any county court of this State, the judges thereof, upon suggestion in writing, by either of the parties thereto, supported by affidavit or other proper evidence, that a fair and impar-

tial trial cannot be had in the county court of the county where such suit or action is depending, shall and may order and direct the record of their proceedings in such suit or action to be transmitted to the judges of any county court within the district, for trial, and the judges of such county court to whom the said record shall be transmitted shall hear and determine the same in like manner as if such suit or action had been originally instituted therein; provided, nevertheless, That such suggestion shall be made as aforesaid before or during the term in which the issue or issues may be joined in said suit or action; And provided, also, That such further remedy may be provided by law in the premises as the Legislature shall from time to time direct and enact."

The term action commonly means a specific method of enforcing a right in a court of law, and is not so comprehensive as the term suit, whose prevailing usage is to denote any proceeding brought by one person against another to enforce a right, whether at law or in equity. The practical difference, therefore, is that action is usually applied to law, while suit is indifferently employed to designate a proceeding either at law or in equity. Bouvier's Law Dictionary. Accordingly, when to the words "any suit or action" are added the qualifying words "at law," the limitation thus imposed upon the term suit confines its application to law, and the two words "suit" and "action" become synonymous when put in the alternative in the phrase "any suit or action at law." Since any action at law is a general term, it would embrace every action at law of whatever nature, unless a limitation is found expressed in the language of the section under consideration when its provisions are applied to the subject matter of this particular section of the Constitution.

The object of the amendment was to assure "a fair and impartial trial" when it could not be had in the county court where the action was depending. The action, therefore, must be one in which there is a trial. In its general sense a trial may involve an issue of law or of fact, but in its more restricted significance a trial means the examination and determination, according to law, of an issue of fact presented

by the pleadings in the action. An analysis of the amendment will make it clear that the term trial was used in its narrower meaning, and that the trial contemplated was an action in which there was both an issue of fact and a right of trial by jury.

In order to gratify the amendment an issue must arise in the action, since the suggestion for removal was necessarily made "before or during the term in which the issue or issues may be joined" in the action; and this issue was one of fact, because the removal is from the jury, which is the customary trier of facts; and not from the court, which decides all questions of law but which, as a general rule, cannot try an issue of fact except by agreement of the parties and then sitting in the capacity of a jury. That the right of removal was not based upon any actual or apprehended attitude of the court is established by the fact that the removal of the action was confined to a court of the same judicial district, in which the same members of the court sat. *Chapel Chemical Co. v. Sulphur Mines Co.* (1896), 85 Md. 684, 685 . Compare *Manly v. State,* 7 Md. 135, 148. The evil to which the right of removal is addressed is the undue influence of local passion, prejudice, or interest, to which jurors as a class are peculiarly subject and responsive and which are often reflected in their verdicts to the injury of a litigant. *Negro Jerry v. Townshend,* 2 Md. 274, 278-279; *Cooke v. Cooke,* 41 Md. 363, 366-372; *State v. Dashiel,* 6 H. & J., 268, 269-272; *Griffin v. Leslie,* 20 Md. 15, 18; *Hoyer v. Colton & Baetjer,* 43 Md. 421, 422; *Downs v. State,* 111 Md. 241, 244-246; *Schaible v. Home Ins. Co.,* 132 Md. 680, 683.

Since issues of fact are primarily for the jury, and the power of removal is designed to attain a fair and impartial trial by an unbiased jury, it would seem to follow that the action in which a removal is permitted is one at law, in which there must be at least both an issue of fact and a right of trial by jury. 2 *Poe, Pl. & Pr.,* sec. 93.

At the time of the adoption of the amendment, the common law actions in use in Maryland were assumpsit, case, debt, trover, ejectment, replevin, scire facias and trespass. In

addition, there was the statutory action of attachment, which had originated in the Act of 1715, ch. 40, and which, in the language of Evans, "in one or two of its shapes, it approaches so nearly to the character of an action as to entitle it to be considered one of the remedies of the law of Maryland." Furthermore, there was a statutory proceeding at law whereby a negro by petition could institute an action against an alleged owner to have the negro's freedom established. After the petition was filed on the law side, a summons issued for the defendant, and then followed the usual pleadings, trial, with right of either party to a jury, verdict and judgment, with a right of appeal. *Evans' Practice* (1839), 45; 402, note b; *Harris' Entries* (1801), vol. 1, 654, 655, 601; vol. 2, 201-204, 257, 258, 122, 123, 208, 530; 2 *Poe, Pl. & Pr.,* secs. 608, 611; Acts of 1796, ch. 67, secs. 21, 27; Code of 1860, art. 66, sec. 88, art. 5, sec. 4; Code, art. 9, secs. 14, 16, 28, 29, 42. Every one of these common law and statutory actions met the test for inclusion within the constitutional amendment, since in the trial of every one there would arise on the plea an issue of fact for determination by a jury, unless submitted by agreement to the court. It is necessary to conclude that these common law and statutory actions were actions at law within the meaning of the amendment.

The other subsisting actions at the time of the adoption of the amendment to the Constitution were habeas corpus, certiorari and mandamus. *Evans' Practice* (1839), 380. These writs or common law actions do not fall within the purview of the amendment. In the writ of habeas corpus any issue of fact is determined at the hearing or trial by the court before whom the writ is returnable. *Church on Habeas Corpus* (2nd Ed.), secs. 172-174, 313; Code, art. 42, secs. 1, 10, 11. Nor is there any issue of fact for trial by jury arising in an application for the writ of certiorari. The function of the writ is not to authorize the court issuing it to take cognizance of the case and decide it on its merits, but simply to inquire whether the inferior court to which the writ is directed is proceeding within the limits of its authority and jurisdiction.

2 *Poe, Pl. & Pr.*, secs. 724, 722. Nor was there in 1805 any issue of fact for a jury involved in the application for a mandamus except in a single class of cases which will later be discussed.

The writ was originally applied for in the name of the State, on the relation of the party who claimed a right to the writ. The relator presented a petition, which was verified by the oath of the applicant and, in proper cases, supported by other affidavits. Mr. Poe has fully stated the subsequent proceedings, and all that need be here repeated is that, if the petition was sustained, the defendant was ordered to make his return, and the sufficiency of this return determined the relator's right to the writ. If the return stated "with precision and certainty, facts which were sufficient in law to justify the court in refusing the writ, the facts alleged were not traversable, and whether they were true or not the return was conclusive and the writ was denied. The only remedy, if the facts alleged in the return were untrue, was by an action on the case for a false return; and then after a verdict and judgment for the relator in such case, the application for a mandamus could be renewed and the writ was ordinarily granted." 2 *Poe, Pl. & Pr.*, sec. 712.

Thus at common law the finality of the return prevented any issue of fact. This situation continued until the Statute of 9 Anne, chapter 20, was passed in 1710, enabling the relator to plead to or traverse all or any of the material facts contained in the return, and the respondent to reply, take issue or demur, with such further proceedings and trial as might have been had if the relator had brought his action on the case for a false return. In the event the relator obtained judgment, a peremptory writ of mandamus was granted. 2 *Alexander's British Statutes*, pp. 936-941. This remedial legislation was limited to "Trying and Determining the Rights of Offices and Franchises in Corporations and Boroughs," and while in force in Maryland left a great body of cases not within its terms that continued to be governed by the rules, principles, and practice of the common law. The

situation continued unchanged until the General Assembly of Maryland supplemented the statute by the passage of chapter 78 of the Acts of 1828. This statute was partial legislation, and the proceedings and practice in all cases of mandamus were not made uniform until the enactment of chapter 285 of the Acts of 1858. *Supra; Harwood v. Marshall* (1857), 10 Md. 463. Code, art. 60, secs. 1-12. Consequently, when the constitutional right of removal was adopted in 1805, the petition for a writ of mandamus did not involve the trial of an issue of fact, except in the case of a right to an office or franchise in a municipality. This single exception would not warrant the classification of a writ of mandamus with those actions at law in which issues of fact were heard and determined by trial by jury.

Since in 1805 neither the granting of the writ of habeas corpus, certiorari, nor mandamus, except in the one class of cases that have been mentioned, depended upon a trial and finding of an issue of fact by the jury, these three writs are excluded by the intention of the framers of the amendment, as is evidenced by its terms. The exclusion of these three writs, which are called extraordinary legal remedies because they afford redress in those extraordinary circumstances or factual combinations in which the common law actions are not adequate for full relief, defined by elimination the term action to mean the ordinary common law actions, and attachment and petition for freedom. Those common law and statutory actions, in addition to tendering (a) an issue of fact (b) for trial by jury, have the further attributes (c) of beginning in a court of original common law jurisdiction, and (d) of being the ordinary proceedings between man and man by which redress is sought as a matter of right in cases of ordinary injuries to person and to property. *Evans' Practice* (1839) 383.

So, the now extinct petition for freedom was within the meaning of the term action as used in the Constitution, because the petition began in a court of original jurisdiction; the parties were the negro and his putative owner; and the

controversy was over personal and property rights in an ordinary matter whose determination raised an issue of fact for decision by a jury. *Queen v. Neale* (1810), 3 H. & J. 158; *Negro Jerry et al. v. Townshend* (1847), 2 Md. 274.

The provision for removal of civil actions has been the subject of debate in every constitutional convention, but the discussions were with reference to where the cause should be removed and whether the right of removal should be absolute or dependent upon satisfactory proof to the court that a fair and impartial trial could not be had. Debates Md. Reform Convention, vol. 1, p. 242, vol. 2, p. 747; Proceedings Md. State Convention (1850), 683, 684; Debates of Constitutional Convention of 1864, vol. 3, pp. 1403-1411; Debates Constitutional Convention of 1867 (Perlman), 398. On the other hand, the changes with respect to the subject matter of removal seemed to have provoked no opposition. In the convention of 1850-1851, an addition of "issues from the orphans' court, or from any court, sitting in equity, in petitions for freedom" was made without debate. By the Constitution of 1864, the phrase was abbreviated so as to read "any suit or action, issue or petition," and the Constitution of 1867 made no change in this language. The subsisting provision is the amendment submitted by chapter 364 of the Acts of 1874, and adopted November, 1875. It omits the obsolete petition for freedom, but restores the clearer language of the Constitution of 1851, and confers the right of removal "in all suits or actions at law, issues from the orphans' court or from any court, sitting in equity." Const. art.4, sec. 8; Const. 1867, art. 4, sec. 8; 1864, art. 4, sec. 9; 1851, art. 4, sec. 28; *Niles on Const. Law,* pp. 496, 452, 420, 337, 378.

The only difference, therefore, between the present constitutional right of removal and that adopted in the amendment of 1805, is the subsisting additional right of removal in issues from the orphans' court or from a court of equity. These issues are not in actions at law, and their presence does not affect the inquiry at bar, except to emphasize that it is necessary to go back to the first constitutional declaration

and the subsequent decisions to get at the true meaning of the present one. *Knee v. Balto. City Pass. Ry. Co.,* 87 Md. 623, 632. A further illustration of the accuracy of this statement is afforded by the decisions denying the right of removal in issues for a jury in insolvency. The insolvent laws are the creation of legislation and the proceedings were unknown at common law. *Castleberg v. Wheeler,* 68 Md. 266, 273-277. Nor did the statutory procedure prescribed have any of the elements of an action at law; but, since the passage of chapter 110 of the Acts of 1805, it is provided in the statute that, when allegations were filed against an applicant for the benefit of the insolvent law charging fraud or undue preferences, the court, upon request, was required to direct an issue or issues of fact, in a summary way, without the form of an action, to have a jury determine the truth of the allegations on the issues so framed. Section 9; Code, art. 47, secs. 21, 23. However, the issues for removal are expressly confined by the Constitution to those from the orphans' court and from a court of equity, and so decided in *Michael v. Schroeder et al.* (1815), 4 H. & J. 227, and *Trayhern v. Hamill* (1879), 53 Md. 90.

It is obvious that equity causes cannot be removed for trial. *Cook v. Cook* (1874), 41 Md. 362; *Wilmer v. Light Street Savings & Bldg. Assn.* (1922), 141 Md. 238. Nor is a removal allowed from the trial court in a case brought there on appeal either from a judgment of a justice of the peace (a); or from an order of the county commissioners passed in a proceedings for the opening of a road (b); or prior to Acts of 1927, ch. 587, from an order of the State Industrial Accident Commission (c); or where an inquisition taken in the exercise of the power of eminent domain lies in court for confirmation (d), since the several actions did not begin in a court of original jurisdiction. (a) *Geekie v. Harbourd* (1879), 52 Md. 461; *Charles County v. Wilmer* (1919), 131 Md. 175. (b) *Hoshall v. Hoffacker* (1857), 11 Md. 362. (c) *Slacum v. Jolley* (1927), 153 Md. 343. (d) *Chappell v. Edmondson Ave. Co.* (1896), 83 Md. 512, which was before Acts of 1912, ch. 117, whereby applica-

tion is to be made to the court instead of to a justice of the peace. Again, there is no right of removal where the action is brought in a court of original jurisdiction by the State in the exercise of its sovereign power or function, as where, since the statute passed in 1912, the proceedings are instituted in a court to condemn land for the public use (b) ; or to have a forfeiture of chartered franchises for abuse, misuse, or non-use. (a) *Baltimore v. Kane* (1914), 125 Md. 135; see Acts of 1912, ch. 117; Code, art. 33A. (b) *Bel Air Social etc. Club v. State* (1891), 74 Md. 297.

Furthermore, an action in a court of original jurisdiction cannot be removed after the right of recovery is fixed by a judgment by default, although the amount of the judgment remains to be ascertained by the verdict of the jury. *Northern Central Ry. v. Rulledge* (1874), 41 Md. 372, 375-377, 379; *Schaible v. Home Ins. Co.* (1918), 132 Md. 680; 2 *Poe, Pl. & Pr.,* secs. 93, 94.

When the question at bar is considered historically and in the light of these decisions, it becomes clear that the constitutional provision now in effect was intended to exclude the common law writ or action of mandamus from its operation. The simplification, directness, expedition, and effectiveness introduced by the described statutory changes were procedural improvements, which did not alter the character of the writ nor the legal principles upon which the court acts in granting or refusing the writ. *Poe, Pl. & Pr.,* sec. 713. See *Baltimore v. Kane,* 125 Md. 135, 138. The writ or action of mandamus continues to be a writ not of right nor granted as of course, but only in the sound legal discretion of the court to whom the application is made. The writ concerns primarily the performance of a positive duty of office, agreeable to right and justice, and is generally invoked to compel a person, corporation, or inferior court to do some particular and specified thing which pertains to its or his office and duty. *Merrill* on *Mandamus,* secs. 1, 13, 23. Not only must the relator have a clear legal right to have the thing done, but it must be in the power of the respondent to perform the duty required. It follows that the inquiry of fact is narrow

and the necessity for an issue of fact will be of infrequent occurrence. *Creager v. Hooper,* 83 Md. 490, 504. See *Upshur v. Baltimore,* 94 Md. 760-761; *Eichelberger v. Sifford,* 27 Md. 329.

Not only does the nature and use of the remedy result in the issue being generally one of law for the court, but the great value of the writ is due to its principal function being to enforce the performance of official duties. *George's Creek etc. Co. v. Allegany County,* 59 Md. 259. The necessity for the prompt disposition of public questions argues against any implication in favor of a removal. Furthermore, the statute provides for a trial of an issue of fact by a jury, if either party desires it, but, in any event, the issue stands for trial on the second day of the next succeeding term of court, if the issue be joined during the recess of the court, but if the issue be joined during the session of the court the issue must stand for trial during the term unless for cause shown by the respondent. If the continuance be granted, the issue shall be heard on the second day of the next succeeding term of such court, unless the parties shall agree upon an earlier day. And if a judgment be given in favor of the petitioner, a peremptory writ of mandamus shall be granted without delay against the defendant. Code, art. 60. The statute gives no right of removal, and its express provisions for a speedy trial would be defeated if a removal were allowed. The terms and procedure prescribed by the article negative any inference that a removal was contemplated.

If the writ issue and it is disobeyed contumaciously, it is enforced by contempt proceedings against the recusant respondent. If, in the pending case, the trial of issues before a jury should result in a finding for the relator, and a peremptory mandamus issue forthwith out of the Circuit Court for Baltimore County, the writ would be granted by a court not intended by the statute, and by one which would have difficulty in enforcing its mandate against public officials of another jurisdiction. On the other hand, there is no provision by statute whereby the court in which the action was begun could direct the writ to issue upon a transcript of the

finding of the jury on the issues in the court to which the action had been removed. These suggested difficulties may not be insurmountable, but, by indicating the problems, they do give weight to the conclusion that there is no right of removal in a proceeding for the writ of mandamus. *Cook v. Cook,* 41 Md. 366; *Bel Air Social etc. Club v. State,* 74 Md. 297, 299-301.

*Order affirmed, with costs.*