(Decided 2d June, 1869.)

BENJAMIN BERRY, by JOSEPH K. ROBERTS, JR., his Committee, *vs.* AUGUSTUS P. SKINNER, Mortgagee and Trustee.

*Mortgage under Article 64, of the Code of Pub. Gen'l Laws—Power of Sale in a Mortgage—Lunacy of the Mortgagor after the execution of the Mortgage.*

A mortgage made pursuant to the 64th Article of the Code of Pub. Gen'l Laws, contained a power of sale expressed thus: "But in case of any default being made in any condition of this mortgage, then these presents are hereby declared to be made in trust, and the said S, his heirs, executors, administrators and assigns, or his or their duly constituted attorney or agent, are hereby authorized and empowered to sell all the property hereby mortgaged, or so much thereof as may be necessary, and to grant and convey the same to the purchaser or purchasers thereof or to his, her or their heirs or assigns, which sale shall be made in the

following manner: by giving at least twenty days' notice of the time, place, manner and terms of sale, in some newspaper published in Baltimore city; and the proceeds arising from such sale to apply first, to the payment of all expenses incident to such sale; secondly, to the payment of all moneys owing hereunder, whether the same shall have matured or not; and as to the balance, to pay it over to the said B, (the mortgagor,) or his heirs or assigns." Subsequent to the execution of the mortgage, the mortgagor became a lunatic, and a committee was appointed to take charge of his person and estate. Default was made by the mortgagor, and the mortgagee, in pursuance of the provisions of the 64th Article of the Code, sold the mortgaged property and reported the sale to the Court. The usual order of ratification *nisi* was passed. Upon exceptions taken to the sale, in behalf of the mortgagor, HELD:

1st. That the power of sale contained in the mortgage, was a power coupled with an interest in the premises conveyed by the mortgage deed, was appendant to the estate, was part of the security itself, and would pass with the estate by assignment of the mortgage debt, and would not be affected by the death of the mortgagor.

2d. That the lunacy of the mortgagor did not in any manner affect or interfere with the mortgagee's right to execute the power of sale, and foreclose the right of redemption, in the mode and manner stipulated by the parties.

3d. That the application of the committee of the lunatic for an order to sell the mortgaged premises, for the benefit of creditors generally, did not have the effect to suspend the execution of the power of sale by the mortgagee.

APPEAL from the Circuit Court for Prince George's County, in Equity.

This appeal was taken from an order of the Court below, dated the 19th March, 1869, ratifying a sale of mortgaged real estate, made by the appellee, under the provisions of the 64th Article of the Code. On the 7th of April, 1864, Benjamin Berry executed a mortgage of certain real estate in Prince George's county, to the appellee, to secure to him the payment in five years, of the sum of four thousand dollars, loaned by him to the said Berry, and interest thereon half-yearly. In this mortgage there were conditions and covenants by the mortgagor authorizing the mortgagee, on default being made

by the mortgagor, to sell, on giving twenty days' notice of the sale, in some newspaper published in the city of Baltimore. The default occurred, and the proceedings in this cause commenced on the 27th of June, 1868, under the provisions of the 64th Art. of the Code, by filing a copy of the mortgage, with a bond by the mortgagee, as trustee. Notice was given by advertisements in the "Sun" (a newspaper published in Baltimore,) for the requisite time, and according to said notice, the property was sold on the 1st of September, 1868, at public auction, and purchased by Thomas Cottingham for the sum of $5,605.00, and the sale duly reported to the Court. There was the usual order of ratification *nisi*.

On the 22d of October, 1868, the appellant, Roberts, as committee of Berry, who had been declared a lunatic, filed exceptions to the ratification of the sale. With these exceptions were filed a duly certified transcript of the proceedings in a cause on the equity side of said Court, whereby it appeared that the appellant, Roberts, had been duly appointed a committee to take charge of the person and property of the said Benjamin Berry, (who since the date of the mortgage had become a lunatic,) and had qualified by giving bond.

In the same transcript was the petition of Roberts, as such committee, and one of the creditors of the lunatic, praying for a decree for the sale of the estate of said lunatic, and the proceedings thereunder, which however, had reached no conclusion by any decree of the Court.

The case was submitted to the Court, and the order finally ratifying the sale, was passed. From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, GRASON, and ALVEY, J.

*Joseph K. Roberts, Jr.* and *Thos. F. Bowie,* for the appellant:

Courts of Chancery are vested with the special care and custody of the persons and estates of lunatics, and, at the

time of the sale, the Court had assumed full and complete jurisdiction over the person and estate of the lunatic. In the Matter of *Rachel Colvin,* 3 *Md. Ch. Dec.,* 295; *Brogden vs. Walker,* 2 *H. & J.,* 285; *Act* 1785, *chap.* 72, *sec.* 6; *Code, Art.* 16, *secs.* 79–87; 2 *Story's Equity, sec.* 1364; *Alexander's Ch. Prac.,* 222, 223, 231, 232.

Lunatics are considered in law civilly dead, and there was no one in being at the date of the sale of the property to claim for the lunatic that valuable right of redemption which was secured to him by the law. In the Matter of *Rachel Colvin,* 3 *Md. Ch. Dec.,* 278, *and* 4 *Md. Ch. Dec.,* 126; *Chitty on Contracts,* 137; 2 *Story's Equity, secs.* 1019, 1323.

A mortgage is a mere security for the payment of a debt, and in this case, it could only be enforced through the interposition of a Court of Equity. *Timms and wife vs. Shannon,* 19 *Md.,* 296, 297.

By Article 16, Code of Public General Laws, the property of a lunatic may be decreed to be sold for the payment of his debts, by application to a Court of Equity only. *Campbell's Case,* 2 *Bland,* 209; *Boarman's Case,* 2 *Bland,* 89; *Morgan's Case,* 3 *Bland,* 332; *Watkins vs. Worthington,* 2 *Bland,* 509; *Wampler vs. Walfinger,* 13 *Md.,* 337.

Becoming a lunatic after entering into a *bona fide* contract, does not release the lunatic from liability, but a Court of Equity is alone authorized to enforce said contract by its decree. 3 *Bac. Abridg.,* 540; *Colegate D. Owings' Case,* 1 *Bland,* 370.

After the death of a lunatic, Courts of Equity will not administer his estate for the benefit of creditors, as their special jurisdiction then ceases. *Cain, et al. vs. Warford,* 3 *Md.,* 454.

*Frank. H. Stockett* and *C. C. Magruder,* for the appellee:

The proceedings by the appellee, were strictly in accordance with the provisions of Article 64, of the Code, and the powers vested in him by the mortgage from Berry. This being so, the only questions to be considered by the Court, are:

*First.* Whether the rights of a mortgagee, under a conveyance executed in accordance with the provisions of Art. 64, of the Code, are to be defeated or postponed by the fact, that the mortgagor afterwards became a lunatic, and had a committee appointed to take charge of his person and property?

On this point the provisions of Article 64, of the Code, are conclusive. It confers the powers on the contracting parties to make their own terms and conditions, within the limits prescribed by the laws, and the covenants so made and the powers so conferred, are the law of the case, and no restriction will be supplied by the Courts, or interference extended, unless there be fraud or misrepresentation in procuring the deed, or bad faith in carrying out its covenants. It was perfectly competent for the mortgagor, when he entered into the agreement, ratifying or evidencing it by his solemn deed, to have made provision for such contingencies as he designed should excuse his failure to keep his covenants. *Touteng, et al. vs. Hubbard*, 3 *Bos. & Pul.*, 300; *Bullock vs. Dommitt*, 6 *Term*, 650; *The Brecknock Co. vs. Pritchard*, 6 *Term*, 750; *Atkinson vs. Ritchie*, 10 *East.*, 531; *Chitty on Contracts*, 55, 59, 734; 1 *Parsons on Contracts*, 384, 385; 2 *Parsons on Contracts*, 158, 159, 162, 163, 165, 169, 170, 171, 183, 184, 185, 186, 188. That he did not do so, was perhaps his misfortune, but that would not authorize a Court of Equity to interfere, to restrain the rights of the other contracting party, even had the application been made by the committee of the lunatic, by bill for an injunction, still less can any authority be found recognizing such an objection to the ratification of a *judicial* sale, openly made, without notice of objection or hindrance, and after every requirement of the law had been fully complied with. *Code, Art.* 64, sec. 5, &c.; 4 *Kent's Comms.*, 146–7–8, (*marginal;*) *Bergen vs. Bennett*, 1 *New York Cas. in Error*, 1, 14, 15, 16, 17.

*Secondly.* Whether the fact that proceedings have been commenced by the committee or the creditors of the lunatic, for the sale of his property to pay the debt of the mortgagee

with other creditors, to which suit however, the mortgagee is not made a party, can suspend or postpone his rights and powers under such mortgage?

There is not a sentence either in the covenant of the deed or in the provisions of any section of the Article of the Code, governing such proceedings, which would sanction a course so subversive of the rights and obligations under a deed solemnly executed.

ALVEY, J., delivered the opinion of the Court.

In this case, it being conceded that the mortgagor was sane and competent to contract at the time of the execution of the mortgage, and that default in payment had occurred before proceedings were taken to make sale under the power, and all the preliminary requisites to making the sale having been complied with, the sole question for our consideration is, whether the subsequent lunacy of the mortgagor, and the proceedings had in reference thereto in equity, could have the effect of suspending the execution of the power of sale, by the mortgagee?

The mortgage, made pursuant to the 64th Article of the Code of Public General Laws, contains a power of sale expressed thus: " But in case of any default being made in any condition of this mortgage, then these presents are hereby declared to be made in trust, and the said Augustus P. Skinner, his heirs, executors, administrators and assigns, or his or their duly constituted attorney or agent, are hereby authorized and empowered to sell all the property hereby mortgaged, or so much thereof as may be necessary, and to grant and convey the same to the purchaser or purchasers thereof, or to his, her or their heirs or assigns, which sale.shall be made in the following manner: by giving at least twenty days' notice of the time, place, manner and terms of sale, in some newspaper published in Baltimore city; and the proceeds arising from such sale to apply first, to the payment of all expenses incident to such sale; secondly, to the payment of all moneys

owing hereunder, whether the same shall have matured or not; and as to the balance, to pay it over to the said Benjamin Berry, or his heirs or assigns."

It is plain this is not a naked power collateral to the grant, but is a power coupled with an interest in the premises conveyed by the mortgage deed. Being intended for the benefit of the mortgagee, as affording him a more speedy and summary mode of collecting his debt than by ordinary proceeding to foreclose, it is appendant to the estate and is part of the security itself. It would pass with the estate by assignment of the mortgage debt, and would not be affected by the death of the mortgagor, but could be executed after his death. *Bergen vs. Bennett*, 1 *Caines' Cas.*, 1; *Wilson vs. Troup*, 2 *Cow.*, 236; *Beatie vs. Butler*, 21 *Mo.*, 313; *Varnum vs. Meserve*, 8 *Allen*, 158; *Bell vs. Twilight*, 2 *Foster*, 500; *Bradly vs. Chester Valley R. R. Co.*, 36 *Penn.*, 151; *Hunt vs. Rousmanier*, 8 *Wheat.*, 174; *Wright vs. Rose*, 2 *Sim. & Stu.*, 323.

On the subject of these powers of sale in mortgage deeds, Chancellor KENT, *in vol. 4, p.* 147, *of his Commentaries*, says: "These powers fall under the class of powers appendant or annexed to the estate, and they are powers coupled with an interest, and are irrevocable, and are deemed part of the mortgage security, and vest in any person, who, by assignment or otherwise, becomes entitled to the money secured to be paid." The insertion of such power of sale in the mortgage, does not, however, in any manner change or affect the right of the mortgagor, or of any person legally representing him, to redeem at any time before the power is executed; but the execution of such power, by sale of the mortgaged premises, virtually forecloses the mortgage, and divests all right of redemption. That is the purpose and design of the power.

Such being the nature and character of the power in the mortgage before us, no other conclusion, upon principle, can be drawn than that the lunacy of the mortgagor could not in any manner affect or interfere with the mortgagee's right to execute the power, and foreclose the right of redemption, in

the mode and manner stipulated by the parties. If death would not revoke, or suspend the execution of such power, there is no reason why the lunacy of the mortgagor should have that affect. The mortgagee cannot be supended in his rights, because of the misfortunes of the mortgagor, nor of his lunacy any more than any other misfortune, unless provided for in the contract. That a mere authority, not coupled with an interest, nor intended as a security, ceases, or is suspended by the insanity of the principal, is clear beyond dispute; but the principle that insanity operates as a revocation, cannot apply where the power is coupled with an interest, so that it can be executed in the name of the donee or trustee. *Davis vs. Lane,* 10 *N. Hamp.,* 156.

Nor can the proceedings in lunacy, and the application therein of the committee for an order to sell the mortgaged premises for the benefit of creditors generally, have the effect to suspend the execution of the power by the mortgagee. He, the mortgagee, was constituted a trustee by the mortgage itself to sell the mortgaged property, on default of payment, and the Court has no power to deprive him of the summary means of realizing his debt that formed a part of the security upon which he advanced his money.

The power, then, not being affected by the lunacy of the mortgagor, and all the pre-requisites to its execution having been complied with, it becomes the right of the purchaser, as well as the right of the mortgagee, that the sale should be sustained. And, in the absence of irregularity, fraud, or unfairness in executing the power, the Court has no alternative, however harsh and severe the proceeding may appear to be, but to ratify the sale.

Inadequacy of price and the want of the prescribed notice, were also grounds assigned for setting aside the sale, but as they have not been supported by proof, they have not been urged on this appeal. The order appealed from must be affirmed.

*Order affirmed.*

(Decided 2d June, 1869.)