## FRANK W. MISH, Mortagee, *vs.* REBECCA A. LECHLIDER, Executrix.

*Mortgages—Mortgagee's Power of Sale Not Affected by Order of Orphans' Court Directing Mortgagor's Executor to Sell.*

A mortgagor of land died leaving a will by which his executor was authorized to sell the real estate for the payment of debts.   The Orphans' Court passed an order directing the executor to sell the mortgaged property.   *Held*, that such order does not operate to prevent the mortgagee from subsequently proceeding to sell under his mortgage, since the power of sale in a mortgage is appendant to the estate and part of the security, and since the Orphans' Court has not concurrent jurisdiction with the Equity Court over mortgage sales.

Appeal from an order of the Circuit Court for Washing-·
ton County (STAKE, J.), restraining the appellant from
selling under his mortgage the real estate previously directed
to be sold by the Orphans' Court of said county.

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, PEARCE and SCHMUCKER, JJ.

*Frank W. Mish*, appellant, *in propria persona.*

*Thompson A. Brown*, for the appellee.

FOWLER, J., delivered the opinion of the Court.

On the 9th of April, 1894, Alexander A. Lechlider and
wife and others joined in a mortgage to Frank W. Mish,
of certain real estate in Washington County, Maryland, to
secure the payment of the sum of nine thousand dollars,
one year from the date of said mortgage. This mortgage
contains the usual power of sale authorizing the mortgagee
to sell the mortgage premises in case of default. In Sep-
tember, 1898, one of the mortgagors, Alexander A. Lech-
lider, died leaving a will which was duly admitted to pro-
bate in the Orphans' Court of Washington County. By
this will the appellee, Rebecca A. Lechlider, the wife of
the testator, was appointed executrix with power to sell the
real estate for the payment of debts, if the personal prop-
erty should be insufficient for that purpose. It also appears
from the agreed statement of facts, that title to a large tract
of land as well as to certain lots in Hagerstown, all in-
cluded in the mortgage, was not, at the date thereof, in the
said testator, and that he obtained title thereto after the
date of the mortgage, and that this appellant, the mort-
gagee, was not a party to the deed by which said land was
conveyed.

The appellee, as executrix, authorized the appellant, as
mortgagee, to institute proceedings under the mortgage on
the equity side of the Circuit Court for Washington County
for the sale of the mortgaged property, with the understand-

ing that a representative of the estate of the testator should
be invited to help to sell the same. These proceedings
were instituted by the mortgagee on the 17th of November,
1898. But, notwithstanding this agreement, the appellee
applied to the Orphans' Court, and upon her *ex parte* ap-
plication, that Court, without notice to, or the knowledge of
the appellant, passed an order authorizing her, as executrix,
to "sell all the real estate of said deceased, directed to be
sold by his will." But upon examination of this will we
ascertain that she was only authorized to sell the real
estate in case the personal property should not yield suffi-
cient to pay the debts. There is not only no allegation on
the part of the appellee, but there is no proof that there was
any such deficiency. The mortgagee offered to accept
payment before advertising, but whether unable or unwill-
ing to pay, the fact is that the executrix did not avail her-
self of the offer.

There seems to be some confusion in the agreed state-
ment of facts, for, although it is therein stated, as we have
seen, that the proceedings in equity were begun on the 17th
of November, 1898, and the order of the Orphans' Court,
as contained in the record, was passed on the 22nd of No-
vember, 1898, yet it is agreed that the order was passed
prior to the filing of the mortgage to execute the power of
sale. But, whatever the fact may be, it appears to be con-
ceded by the mortgagee in his brief that the order was
passed before he commenced his equity proceedings. And
in the opinion of the learned Judge who decided this case
below, the fact that the Orphans' Court had assumed prior
jurisdiction was relied on to show that a Court of Equity
was without power to order a sale under the mortgage. In
accordance with this view he passed an order enjoining the
mortgagee from selling under his mortgage. Hence this
appeal.

Waiving the question whether the Orphans' Court had
jurisdiction to pass the order referred to, in the absence of
any proof to show that the contingency had arisen, namely,

insufficiency of personal property, upon which alone the executrix was authorized by the will to sell, we proceed to consider briefly the only question which was argued by counsel, namely, whether the fact that the Orphans' Court passed the order relied on, under the circumstances of this case, prior to the beginning of the equity proceedings, entirely supersedes the mortgage power of sale. It seems to us there can be no doubt in regard to the answer.

(1). If, as is admitted, the appellee agreed with the appellant that he should proceed to advertise and sell, and to that end should institute proceedings in equity, she would undoubtedly be estopped from appealing to that same Court for an injunction to prevent the doing of the very thing she had agreed should be done. Instead of enjoining the appellant the appellee could with more reason and justice have been prevented from selling under an *ex parte* order in violation of her agreement.

(2). But in the second place, this is not a case of concurrent jurisdiction, and, therefore, the question as to which Court first assumed control over the subject-matter of the controversy is immaterial. It is true that the Orphans' Court and equity have concurrent jurisdiction in the supervision of the power of sale given to executors by will, and the executrix here could have doubtless applied to a Court of Equity to aid her in executing the trust imposed on her. (*Keplinger* v. *Maccubin*, 58 Md. 213); but the Orphans' Court has no jurisdiction to entertain an application for sale under a mortgage. All such applications must be made to a Court of Equity. Therefore, the appellant was unquestionably in the right tribunal, and the only one that could afford him the relief appropriate to his situation, unless the death of the mortgagor and the provision in his will authorizing the appellee to sell, had the effect to destroy the power of sale given in the mortgage. But this is one of those powers which CH. KENT says "falls under the class of powers appendant or annexed to the estate * * * and are irrevocable and deemed part of the security." *Berry* v.

*Skinner*, 30 Md. 573. In the opinion of the Court in the case just cited, it is said that "the insertion of such a power of sale in the mortgage, does not, however, in any manner change or affect the right of the mortgagor or of any person legally representing him, to redeem at any time before the power is executed." It will be remembered that the appellant offered to receive the mortgage debt and interest before proceeding under his power of sale. In the case of *Berry* v. *Skinner, supra,* it was held that the lunacy of the mortgagor and the prior proceedings had in reference thereto by the committee of the lunatic for the sale of the mortgaged premises could not have the effect to suspend the execution of the power of sale under the mortgage. " If death," said the Court, " could not revoke or suspend the execution of such power, there is no reason why the lunacy of the mortgagor should have that effect." It is admitted, however, by the appellee, that the mortgagee's power of sale is irrevocable, but it is contended that having delayed in taking steps to enforce it, until after the Orphans' Court had passed its order of sale, he ought to be estopped. This question cannot arise in this case. It may be conceded *ex gratia* that if the mortgagee had made a binding waiver of his rights under the mortgage, and had consented to allow the executor to sell under the will, he would not be allowed thereafter to avail himself of his power of sale, and thus interfere with or prevent the sale ordered by the Orphans' Court. But such is not the case here. On the contrary, the mortgagee was trying to collect his money, but the executrix would not or could not pay it. She agreed he should sell, and then without his knowledge secured the passage of the order she relies on " and refused to co-operate with the mortgagee as previously agreed, and insisted on the right to sell alone."

We forbear to comment further upon this state of facts. It is enough for the present purpose to say that the case made by the appellee is not such a case, as, in our opinion,

justified the action of the Court below. The injunction should have been refused.

> *Order reversed with costs and bill dismissed.*

(Decided March 16th, 1899).