## MESSALL AND HOWE *v.* MERLANDS CLUB, INC.

[No. 477, September Term, 1965.]

*Decided September 13, 1966.*

*Motion for rehearing filed October 13, 1966, denied October 20, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Robert V. Smith,* with whom were *Smith, Ristig & Smith* and *Thomas A. Lohm* on the brief, for appellants.

*William F. Hickey* and *Joseph Zitomer* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

In our narration of what has transpired between these parties we shall do our best to distill the essential facts out of the great broth of pleading and evidence which has boiled up to us from the court below. A number of questions have been presented but, as we see it, our decision will depend on whether a judgment of the Circuit Court for Caroline County (Carter, C. J.) is res judicata in respect of the decision of the trial court (Pugh, J.) in the case at bar.

On 1 June 1956 appellants (Landlords) leased 23½ acres in Montgomery County to appellee (Tenant). The land was improved by a clubhouse, a swimming pool, tennis courts, a riding ring, stables and a lake stocked with fish. Tenant's option to purchase the property had to be exercised during the first three of the last six months of the seven year term. The right to exercise the option was contingent upon Tenant's "compliance with all its obligations" under the lease. Tenant was required to "maintain at its own expense the demised premises in good repair" and "to comply at all times, at its own cost * * * with all rules, orders, ordinances and legal requirements" of public bodies "under whose supervision the demised premises may come." The lease also contained a provision to the effect that the devolution of the lease, by operation of law, upon any person other than Tenant would constitute a default. In 1961 a dispute arose over the computation of rent and the manner of paying it. This resulted in litigation which finally

found its way to this Court. *Messall v. Merlands Club,* 233 Md. 29, 194 A. 2d 793 (1963). The impact of our decision in *Messall* upon the case at bar will be discussed later.

Early in November 1962, Landlords filed a summary repossession action against Tenant in the Montgomery County People's Court in which it was claimed that Tenant was in default as of 10 November 1962. Landlords were enjoined from proceeding with this action, however, by an ex parte order of the court in the then pending litigation.[1] On 16 November 1962, Landlords notified Tenant that the lease was in default for failure to pay the proper rent. A month later (18 December) a letter was sent to Landlords purporting to exercise the option to purchase. This was signed on behalf of the president of the *Board of Trustees* of Merlands Club, Inc., by counsel for Tenant. Landlords replied that the attempt to exercise the option was a nullity and again demanded the surrender of the premises forthwith.

On 1 April 1963, the day after the lease expired, Tenant filed its bill for the specific performance of the option agreement. On the same day the court, ex parte and without bond, ordered Landlords "to cease and desist from any action that would change the status quo of the position of the parties pending the resolution" of the specific performance proceeding. On 5 April, Landlords filed an action in ejectment against Tenant claiming that the lease had expired, by its own terms, on 31 March.

Landlords answered the bill for specific performance on 20 May and on the day following filed a cross-bill seeking a declaratory judgment that the lease was in default on 16 November and that the attempt to exercise the option was ineffective. The day before a scheduled hearing on Tenant's motion to consolidate the two cases Landlords dismissed the cross-bill and filed a suggestion and affidavit of removal in the ejectment case. Judge Pugh designated Baltimore County as the new venue. Tenant succeeded in putting off the trial of the case in Baltimore County until 28 April 1964 when its last motion for a con-

---

1. Equity 24,390 which on appeal became *Messall v. Merlands Club,* 233 Md. 29. See paragraph 17 of Landlords' Petition to Reopen Proceedings, E. 52, Record Extract, No. 71, Sept. Term, 1963

tinuance was denied. On 1 May, *Tenant* filed a suggestion and affidavit of removal and on the same day the court ordered the case sent to Caroline County. Landlords pressed for trial and, over Tenant's objection, the case was assigned for trial on 22 June.

When the case was called for trial the court granted Tenant's motion to amend its pleas. As one might expect, this generated a minor uproar at the trial table but when the dust settled Tenant, by its amended pleas and the court's rulings in respect thereof, had posited the following issues:

1. The general issue by virtue of its plea of "not guilty."
2. Does the People's Court of Montgomery County have exclusive jurisdiction of Landlords' suit?
3. Is *Messall v. Merlands Club, supra,* res judicata of the basic issues?
4. As detailed in its plea on equitable grounds:

   (a) The equity case was filed four days prior to the ejection case and *"will be determinative of the very issues in the ejectment suit * * * [and] they involve the same. parties and subject matter."* (Emphasis supplied.)

   (b) Tenant was not in default and the exercise of the option created the relationship of vendor and vendee, thereby vesting equitable title in the vendee.

The parties having agreed to try the case before Judge Carter without a jury and to exclude witnesses waiting to testify, the three day trial began in Denton, the county seat of Caroline County. After hearing argument and considering the briefs filed by counsel, Judge Carter, on 24 July, found Tenant guilty of "the trespass and ejectment mentioned * * * in the declaration." On the same day "judgment nisi" was entered. On 27 July Tenant appealed. On 28 July judgment was made absolute. The appeal to this Court was dismissed on 14 April 1965. (Reargument denied 25 May 1965.) *Merlands Club v. Messall,* 238 Md. 359, 208 A. 2d 687 (1965).

Judge Carter filed his opinion on 30 September 1964. In disposing of the issue created by Tenant's plea of res judicata he

agreed that the parties and the property in *Messall v. Merlands Club,* 233 Md. 29 (1963) and the parties and the property in the case before him were identical. He noted also this Court's comment in that case that "the record discloses that substantial repairs had been made in recent years, which, we think, would have been sufficient to support a finding that the lease was not in default for failure to keep the demised premises in good repair." (233 Md. at 38.) He observed that "no evidence was admitted [at the trial in 233 Md. 29] to establish any condition subsequent to the date" of filing of the original bill and the cross-bill. (16 June 1961 and 22 August 1961 respectively.) Judge Carter went on to say:

> "It, therefore, appears that the material issues that were determined in the suit previously adjudicated, which are also present in this suit, consist of: (1), the issue of whether the failure of the Lessee to make proper monthly payments under the lease amounted to defaults by the Lessee; and (2) was there a substantial failure of the Lessee to keep the premises in good repair prior to such suits or prior to August 22, 1961. The Court of Appeals determined both of these questions in favor of the Lessee in that suit. Taking cognizance of this fact and furthermore assuming, without deciding, that the acceptance of monthly payments by the Lessor up to November, 1962, constituted a waiver by the Lessors of their right to assert any defaults of the Lessee respecting proper payments or repairs up to that time; the issues here presented which it appears, were not determined in the former suit, are as follows:—(1) the default if any, of the Lessees in failing to properly maintain and repair the property during the period from November 1 to December 18, 1962; (2) the default, if any, of the Lessee because of a violation of paragraph 2(g) existing on December 18, 1962; that is, a failure on its part to comply with the health and fire regulations of Montgomery County; (3) whether the forfeiture of the Lessee's charter on October 31, 1962, which continued until January 27, 1964, thereby vested ownership in the

lease in persons other than the Lessee and therefore constituted a default by reason of a violation of paragraph 4(e) of the lease. It appears from the record of the appeal and the opinions of the lower and appellate Courts that these questions were not determined in Merlands v. Messall, supra."

Judge Carter discussed, in considerable detail, each of the three issues above mentioned and stated:

"It is, therefore, our opinion that at the time the option to purchase was attempted to be exercised on December 18, 1962, the Lessee was in default in its obligation under the lease in respect to at least the three matters mentioned above and therefore ineligible to exercise such an option."

Directly after the conclusion of the trial in Denton hostilities were renewed before Judge Pugh in Rockville and continued *con brio* for another year. A few days after the issuance of our mandate in the ejectment case (25 May 1965) Landlords renewed, for the last time, their oft-repeated motion to "Dismiss or Abate," setting forth as grounds therefor the res judicata effect of the final judgment of the Circuit Court for Caroline County. On 7 September, Judge Pugh filed a lengthy (37 pages) opinion declaring Tenant to be entitled to a decree of specific performance, which he signed the following week.

Since Judge Pugh devoted nearly all of his opinion to the development of his reasons for rejecting the res judicata effect of Judge Carter's decision and since Tenant's contentions virtually coincide with the rationale of Judge Pugh's opinion, we shall consider the several facets thereof and state as concisely as possible why we are unable to agree with the learned Chancellor.

## (a)

### The Injunction

It will be recalled that simultaneously with the filing of the bill of complaint the court ordered Landlords to "cease and desist from any action that would *change the status quo* of the

parties * * *." (Emphasis supplied.) In his opinion Judge Pugh charges that despite his ordering Landlords *"not to take any action to evict or otherwise hinder * * * [Tenant] in the use of the property"* they disobeyed the injunction and filed the ejectment suit. (Emphasis supplied.) It is intimated that in some unexplained manner their suit was thereby nullified.

Entirely apart from the question whether Landlords were bound by an order which fails to measure up to the requirements of Maryland Rules BB 78 a and BB 72 b, it is clear that the order expired (as to Messall) on 12 April (Rule BB 72 b) and no later than 7 May as to Howe (a non-resident who was not personally served). An order extending the injunction was filed 20 May but since the original orders had expired no later than 7 May (Landlords did not consent, Rule BB 72 b) the extension was a nullity. Neither the court nor Tenant ever sought to enforce the injunction by contempt proceedings. In fact, Tenant, shortly thereafter, recognized the legitimacy of the ejectment suit by declaring, in its petition for an order of consolidation, that "the subject matter of both actions is inherently intertwined and must be heard together to be appropriately adjudicated." So also did Judge Pugh. On 27 July 1964, in open court, he said, "These cases could have been consolidated. It would have been the proper thing to do."

It will be observed that the court did *not* order the Landlords "not to take any action to evict or otherwise hinder" Tenant. In the language of the injunction Landlords were ordered to do nothing more than "cease and desist from any action that would change the status quo." What Tenant or the court intended this language to mean is not clear but we think it most unlikely that the mere docketing of an action in ejectment could "change the status quo" of the parties.

## (b)

### Jurisdiction

Judge Pugh held the Caroline County court to be utterly without jurisdiction in the ejectment suit because, he avowed, Code, Art. 53, § 1, vests in the Montgomery County People's Court exclusive jurisdiction to try actions brought by a landlord against a tenant holding over. Neither the court nor Ten-

ant's counsel (who put this contention in issue before Judge Carter) has directed our attention to, nor have we found, any authority in support of this somewhat startling proposition.

The statute (Art. 53, § 1) which has been in force for over a century, provides "a method for repossessing property by a summary proceeding before a justice of the peace." *Trotter v. Lewis,* 185 Md. 528, 536, 45 A. 2d 329 (1946) ; *Darling Shops v. Balto. Center,* 191 Md. 289, 297, 60 A. 2d 669 (1948). In the language of the statute (§ 1) "the lessor * * * *may* make a complaint * * * to any justice of the peace * * * [in the county] wherein such real estate is situate." (Emphasis supplied.) The comment of Chief Judge Allan W. Rhynhart of the People's Court of Baltimore City, in his comprehensive article on the Maryland Law of Landlord and Tenant, is of interest:

> "However, if the landlord desires to avail himself of the summary remedy provided by Article 53, Section 1, he must give three months' written notice to the tenant before the expiration of the term. If the landlord fails to give the notice, * * * then being barred from the summary proceedings which are brought in the People's Court, he must proceed in an action of ejectment in a court of higher jurisdiction." Rhynhart, *Notes on the Law of Landlord and Tenant,* 20 Md. L. Rev. 1, 29 (1960).

In *Glorius v. Watkins,* 203 Md. 546, 551, 102 A. 2d 274 (1954), the owner of the land sought to eject the occupant by means of a bill in equity. The language of Chief Judge Sobeloff, who spoke for the Court, seems especially appropriate:

> "So here, fundamentally the appellee's object is to recover possession of a piece of real estate. Anticipating that the appellants would interpose the contract as a defense, the appellee asserted that it was of no effect because of breaches by the appellants, and because it had been superseded by a new relationship, that of landlord and tenant instead of vendor and vendee. Yet the appellee's main purpose was precisely what an action of ejectment could gratify—recovery of pos-

session, with the incidental aim, as in *Crook v. Brown, supra,* to declare the anticipated defense groundless. *Stinchcomb v. Realty Mortgage Co.,* 171 Md. 317, 322, 188 A. 790, 792; *Finglass v. George Frank Sons Co., supra,* 172 Md. at 136, 190 A. at 752; *Punte v. Taylor,* 189 Md. 102, 111, 53 A. 2d 773, 777; *Diener v. Wheatley,* 191 Md. 690, 698, 62 A. 2d 783, 786."

Maryland Rules T 40, T 41 and T 42 should dispel any lingering doubt that the landlord has a free choice to proceed against a tenant either before a justice of the peace as provided in Art. 53, § 1, or in the circuit court as provided in Rule T 40. One of the oddities in the case is the fact that Landlords, as earlier noted, *did* bring a summary repossession action in the People's Court but were enjoined by Judge Pugh from pressing it.

## (c)
### Judicial Estoppel

The trial judge asserts that Landlords are judicially estopped from contending the judgment in the ejectment suit is res judicata because of inconsistent statements made by Landlords in their pleadings. We shall consider these alleged inconsistent statements in the order in which they appear in the court's opinion.

Paragraph 5 (e) of Tenant's amended plea filed 22 June 1964 (just before the trial in Denton) reads as follows:

"(e) that the exercise of an Option to purchase in a Lease extinguished said Lease and terminated the legal relationship of Landlord and Tenant and creates the legal relationship of Vendor and Vendee thereby vesting equitable title in the Vendee, the subject matter of which is an equitable matter and to be determined by equitable principles."

Landlords "demurred thereto * * * [and said it] is insufficient in law and of substance * * * and that equitable title is insufficient in law as a defense to an action of ejectment by the legal title holder, who can show both title and right to possession." We see no inconsistency here. The demurrer merely

questions whether it is correct, as a matter of law, to say that an equitable title is a defense to an action in ejectment by the holder of the legal title. Judge Carter overruled the demurrer, however, and Landlords amended their answer so as to "deny that the option was properly exercised." We do not think this is the equivalent of saying that the issues in the equity case and the ejectment case were not identical.

While the case was in the Baltimore County court, Landlords, answering one of Tenant's motions to stay the proceedings, stated:

> "3. That regardless of the outcome of said Equity action No. 26628, the plaintiffs are entitled to proceed in this ejectment suit and should be permitted to do so."

Landlords, answering another motion (for a continuance) stated:

> "1. That an action between these litigants now pending in the Circuit Court for Montgomery County, being Equity No. 26628, does not involve identical issues as alleged by the defendant, nor would the resolution of such cause make moot the questions presented herein."

After the transfer of the case to Denton, Landlords, in their answer (filed 22 May 1964) to Tenant's opposition to their motion to advance and set the case for trial, stated:

> "1. That the equity action now pending in the Circuit Court for Montgomery County, Maryland, between these parties does not involve identical issues to this cause as the defendant, who is the plaintiff in that suit, seeks to specifically enforce an option to buy the subject premises."

It appears to us Judge Pugh has overlooked the fact that the identity of issues did not occur until Tenant filed its amended pleas in the ejectment case on 22 June 1964, the first day of the trial. Landlords contend that the statements extracted from their pleadings were correct when made and we are inclined to

agree. Indeed, in their Second Amended Answer, filed in the equity case on 31 July 1964 (after the trial in Denton), Landlords, for the first time averred that the equity case involved "the identical subject matter, the same property, and the same litigants." It will be observed, in passing, that the notion Landlords are estopped was raised for the first time, not by Tenant, but by Judge Pugh.

Another of the oddities in this case is the fact that Tenant, on a number of occasions, stated in its pleadings that "the subject matter of both actions is inherently intertwined," that there was an "identity of subject matter and issues pending in both cases," that the action involved "the same parties [and] the same subject matter," and that the equity case "will be determinative of the very issues in this ejectment suit." Yet on 23 September 1964 (after the ejectment trial), answering Landlords' motion to dismiss, we find Tenant asserting that the "issues determined by the Caroline County Court were separate and distinctive (sic) from issues before this court and show a *complete lack of identity.*" (Emphasis supplied.)

Perhaps it would be more correct to say Tenant is estopped from contending that Judge Carter's decision is not res judicata.

### (d)

### Prior Litigation (233 Md. 29)

It will be recalled that Judge Carter concluded that *Messall v. Merlands Club,* 233 Md. 29, was not res judicata as to any of the issues in the ejectment suit because "no evidence concerning Lessee's [Tenant's] failure to repair" subsequent to 22 August 1961 was admitted. Judge Pugh says Judge Carter "was in error" in doing so and he cites many pages of the transcript (in 233 Md. 29) in support of his views. We have examined this testimony but we find nothing which would undercut Judge Carter's finding. There are a few references to work which was done prior to August 1962 (when the testimony was produced) but it must be remembered that Judge Carter's finding was in respect of conditions as they existed between 1 November and 18 December 1962.

## (e)

### Attack on Findings of the Court in the Ejectment Case

Judge Pugh says Judge Carter cited "six alleged defalcations by the tenant in failing to make repairs to the premises between November 1, 1962 and December 18, 1962." He went on to say "these defalcations *did not occur* during this period. * * * [they] occurred years before * * *." (Emphasis supplied.) Judge Pugh also disputes Judge Carter's findings regarding the violation of health and fire regulations.

What Judge Carter held can best be related by using his own language:

"The evidence here presented on the first issue establishes that during the period from November 1, to December 18, 1962 the buildings and improvements on the property were in a state of disrepair to an extent that their condition constituted a default at that time of the obligation of the Lessee under paragraph 2(e) of the lease requiring the Lessee 'to keep and maintain the demised premises in good repair including painting, as the same shall be at the commencement of the term.—' These defalcations as they have been thus established consist of:—

"(a) failure to keep the exterior of the buildings properly painted;

"(b) failure to properly maintain the interior of the main buildings;

"(c) failure to maintain the roadway leading to the main building in proper repair;

"(d) failure to maintain several hundred feet of fencing on the property in proper repair;

"(e) failure to maintain the apron of the swimming pool in proper repair; and

"(f) failure to maintain the lake at the rear of the property and the border thereof in proper condition.

"All of these failures caused the property to be in substantially less valuable and usable condition than when possession thereof was acquired by the Lessee on April

1, 1956. These failures existed on December 18, 1962 when Mr. Hickey, as attorney for the President of the Lessee corporation, attempted to exercise the option on behalf of the corporation.

"The evidence presented on the second issue as to whether the Lessee was in default in respect to its obligations under paragraph 2(g) requiring compliance with County health and fire regulations at the time the option to purchase was attempted to be exercised on December 18, 1962, establishes the following non-compliances:

"(a) failure to connect the sewerage disposal facilities on the property with the public sewerage system as directed by the health authorities;

"(b) failure to correct a nuisance and health menace created by an overflow of the sewerage disposal facilities;

"(c) failure to clean the exhaust fan above the stove and the stove itself, used in the preparation of food;

"(d) failure to correct fire hazards as requested by the county authorities namely, to repair the boiler room door and cover the inside thereof with fire resistant material; and

"(e) failure to correct a fire hazard caused by use of extension cords, and unapproved fire extinguishers.

"The Lessee's failure to comply with the regulations of lawful authority in respect to these matters, related to the operation of the Club, constituted a direct violation of its obligation under the aforesaid paragraph of the lease and therefore amounted to a default on its part which existed."

We have examined those parts of the record which Judge Pugh cited in support of his contradiction of Judge Carter's findings but, in our judgment, they fall far short of demonstrating that Judge Carter's findings were not supported by sub-

34

stantial evidence. In any event, even if it could be shown that he was wrong, the judgment implementing his decision is final and unreversed and it is not subject to attack or impeachment by the Circuit Court for Montgomery County. See cases collected in 13 M.L.E., *Judgments*, §§131-35.

## (f)
### Estoppel to Use Charter Forfeiture

In respect of the effect of the forfeiture (31 October 1962) of Tenant's charter on its right to exercise the option, Judge Carter had this to say :

"Such a devolution of the ownership of the lease as a corporate asset clearly constitutes a devolvement upon persons other than the Lessee, by operation of law, and is therefore squarely within the provisions of the subject paragraph thereby constituting a default which existed on December 18, 1962. The Lessee contends that notwithstanding this fact when the charter was revived on January 27, 1964 the revival validated all contracts, acts, matters, and things made, done and performed by the officers and agents of the corporation during the time when the charter was void with the same force and effect as if the charter had at all times remained in full force and effect by reason of Art. 23, sec. 85 (d) and therefore that any default caused by the forfeiture is made whole and obliterated. It is difficult to perceive how the later validation of acts of officers of the corporation during the period of forfeiture affects the fact that by the forfeiture ownership of the lease devolved upon persons other than the Lessee by operation of law from October 31, 1962 to January 27, 1964, which fact constitutes a default by the Lessee under the provisions of the lease and which default was in existence at the time the option to purchase was attempted to be exercised on December 18, 1962. The ultimate validation of the acts of the directors by making such acts the acts of the corporation does not alter the fact that by reason of the

forfeiture the lease devolved on persons other than the Lessee which was the situation when the option to purchase was attempted to be exercised."

* * *

"To interpret the intent of the parties to this lease, which restricted the option period to October, November and December, 1962 so that the Lessors would be required to hold the matter open for the Lessees to validate its offer to exercise the option at any time up until January 27, 1964 when the charter was revived or for a period of over a year after the specified period had terminated would be a strained and queer construction, indeed."

The correctness of Judge Carter's holding is disputed by Judge Pugh. He cites as support for his position Code, Art. 23, § 85 (d) which validates, upon revival, "all contracts, acts, matters and things made, done and performed" during the period of forfeiture. Absent that part of paragraph 4 (e) of the lease which reads "or if this lease shall, by operation of law, devolve upon any person * * * other than Lessee" Judge Pugh's contention might be persuasive. In the circumstances, however, especially in light of the language of the lease, we think Judge Carter has correctly stated the law.

Judge Pugh argues further that, because Landlords, in their motion for summary judgment filed 17 February 1964 in the equity case and in a similar motion filed the following day in the ejectment case (while it was in Baltimore County) undertook, for the first time, to make use of the forfeiture of the charter (which had been revived several weeks earlier (27 January 1964)), they are estopped from doing so. It is undisputed that Landlords were unaware of the forfeiture until 31 January 1964—four days after revival. We think the filing, within a few weeks, of their motions for summary judgment demonstrates, in the circumstances, something more than ordinary diligence and we see no reason why they should be estopped from making use of what is undeniably a fact.

Tenant, in its brief, presented a number of questions which Judge Pugh, in his opinion, did not touch upon. We think several of them require some comment.

The Caroline County court lacked jurisdiction, argues Tenant, because an ejectment case can be *tried* only in the county where the land is located. Tenant insists this is the tenor of Maryland Rule T 41. No other authorities are offered. Rule T 41 says nothing about ejectment cases being *tried* only in the county where the land lies. "The action shall be *brought* in the county in which the land lies" is the precise language, of Rule T 41 a. (Emphasis supplied.) In any event, the procedural and jurisdictional problems involved in the institution, removal and trial of actions at law (including ejectment) were settled long ago in *Baltimore v. Libowitz,* 159 Md. 28, 149 Atl. 449 (1930) and recently further discussed in *Bullock v. State,* 230 Md. 280, 186 A. 2d 888 (1962). See also Maryland Rule 542 h which gives the court to which an action has been removed the power to *issue a warrant of resurvey,* a procedure frequently used in ejectment cases and provided for by Rule T 44.

Still another oddity in the case is the fact that it was Judge Pugh himself who signed the order removing the case to Baltimore County. Tenant did not then attack nor, until the filing of its brief, has it since attacked, the propriety or legality of transferring this ejectment case to another county for trial.

We might also point out that it seems to be well established that where the issue of jurisdiction is raised and determined in favor of the jurisdiction, the ensuing judgment on the merits is not open to later collateral attack on the jurisdictional issue, whether or not the determination thereon was erroneous. *Jackson v. Irving Trust Co.,* 311 U. S. 494, 61 S. Ct. 326, 85 L. Ed. 297 (1941) ; 1 B Moore's Federal Practice, Par. 0.405 (5). See also 50 C.J.S., *Judgments,* § 714 and A.L.I., Restatement, Judgments, §§ 5j, 9 and 10.

Tenant insists that because the equity case was filed four days before the ejectment case the doctrine *"qui prior est tempore, potior est jure"* applies and operates to defeat the jurisdiction of the Caroline County court. We do not agree.

The principle of priority is applicable only when the cases involved are identical as to subject matter, parties and *relief sought. Baltimore City v. Gittings,* 113 Md. 119, 77 Atl. 319 (1910) ; *Mish v. Lechlider,* 89 Md. 275, 43 Atl. 57 (1899) ; *Buck v. Colbath,* 70 U. S. 334 (1865) ; 20 Am. Jur. 2d, *Courts,*

§ 131. In the case at bar the relief sought was the specific enforcement of the option. The object of the ejectment suit was to obtain possession of the property. Nevertheless, argues Tenant, Judge Carter, by deciding that Tenant's default precluded the exercise of its option, invaded Judge Pugh's prerogative and decided the specific performance case against Tenant. To that argument we must turn a deaf ear for the conspicuously obvious reason that *Tenant's* plea on equitable grounds *compelled* Judge Carter to decide that issue. His decision is final, unreversed and beyond collateral attack.

Only the final judgment itself may be considered in applying the principle of res judicata. The opinion, being irrelevant and *obiter dicta,* has no force or effect. So argues Tenant. In our judgment a more correct statement of the law will be found in 50 C.J.S., *Judgments,* § 726:

> "* * * [R]ecourse may be had to the opinion of the court in a former action to ascertain what was in the mind of the court when judgment was rendered, especially where there is only a general finding; and where the judgment makes the opinion 'a part of the record' a direct statement in the opinion as to the matters litigated is conclusive. So it has been held that the matters decided in the opinion of an appellate court are concluded although the decision is not in the decree, at least where such matters are within the issues presented by the pleadings."

It will be recalled that the concluding words of Judge Carter's order of 24 July 1964 were: "A written opinion in support of this Order will be filed."

The basic theory of Tenant's defense in the ejectment case was that it was a vendee rather than a lessee holding over and that eviction, in the circumstances, would be inequitable. To reach this conclusion Judge Carter would have been obliged, under the pleadings, to find that Tenant had complied with the obligations under the lease which were a condition precedent to its right to exercise the option. But he found to the contrary, a finding, necessary under the pleadings, to support his final judgment that Tenant was wrongfully in possession.

Our holding in *Cuffley v. Hammond,* 228 Md. 162, 178 A. 2d 901 (1962) is peculiarly relevant to the case at bar and it seems appropriate to conclude this opinion with a brief reference to it. Chief Judge Brune, for the Court, said:

> "The Circuit Court for Anne Arundel County had jurisdiction over the subject matter and over the parties to the first ejectment suit. In that case, unlike *Dundalk Holding Co. v. Easter,* 195 Md. 488 (see p. 494), 73 A. 2d 877, a plea upon equitable grounds was filed, and equitable considerations were therefore not irrelevant—at least in the absence of a showing that such a plea was wholly unfounded or frivolous. Whether the Circuit Court did or did not decide the ejectment suit correctly and whether or not it exercised its equitable jurisdiction therein properly (see *Easter v. Dundalk Holding Co.,* 199 Md. 303, 86 A. 2d 404; *Dundalk Holding Co. v. Easter,* 215 Md. 549, 137 A. 2d 667), are questions which cannot now be relitigated. No appeal was taken in the first ejectment case, and it cannot be reviewed on this appeal. If it were a nullity, it might now be open to collateral attack; but in view of the court's jurisdiction over the parties and the subject matter, we think that its order was not a nullity. The appellants are accordingly bound by the order in the original ejectment suit, whether it was erroneous or not. *Christopher v. Sisk,* 133 Md. 48, 104 A. 355; *Ugast v. La Fontaine,* 189 Md. 227, 55 A. 2d 705; *Riggs v. Loweree,* 189 Md. 437, 56 A. 2d 152." *Id.* at 167-68.

*Decree reversed.*
*Appellee to pay the costs.*