COLT LANES OF DOVER, INC., Defend-
ant Below, Appellant,

v.

BRUNSWICK CORPORATION, a Delaware
Corporation, Plaintiff Below, Appellee,

Fred Wilson and Rodney Village Shopping
Center, Inc., a Delaware Corporation, In-
tervening Plaintiffs Below, Appellees.

BRUNSWICK CORPORATION, a Delaware
Corporation, Plaintiff Below, Appel-
lee and Cross Appellant,

Fred Wilson and Rodney Village Shopping
Center, Inc., a Delaware Corporation, In-
tervening Plaintiffs Below, Appellees and
Cross Appellants,

v.

COLT LANES OF DOVER, INC., Defendant
Below, Appellant and Cross Appellee.

Supreme Court of Delaware.

July 9, 1971.

William D. Bailey, Jr., of Bayard, Brill & Handelman, for appellant.

Richard J. Abrams, of Richards, Layton & Finger, for intervening plaintiffs, appellees and cross-appellants.

John P. Sinclair, of Potter Anderson & Corroon, for plaintiff below, appellee and cross-appellant.

WOLCOTT, Chief Justice, CAREY, Justice, and QUILLEN, Judge, sitting.

QUILLEN, Judge.

This is an appeal from the Court of Chancery. Unless clearly wrong, this Court, of course, will accept the factual conclusions made by the Chancellor in the proceedings below. Application of Delaware Racing Association, 42 Del.Ch. 406, 213 A.2d 203 (Supr.Ct.1965); Lank v. Steiner, 43 Del.Ch. 262, 224 A.2d 242 (Supr.Ct.1966).

Brunswick Corporation, as lessee, brought an injunction suit in the Court of Chancery claiming the right to possession of a bowling alley in Dover. The defendant, Colt Lanes of Dover, Inc., claimed the right to possession, also as lessee, under a prior lease. The landowners, Fred Wilson and Rodney Village Shopping Center, Inc., at the suggestion of the trial Court, intervened as plaintiffs.

In 1961, lease negotiations took place between one Max Ambach, predecessor in title to and a principal of Rodney Village Shopping Center, Inc., and one George Banks. There was oral agreement as to key lease terms, such as the amount of rent and a fifteen year term, but the lessee corporation was not identified.

Banks had a lease prepared which named the defendant, Colt Lanes of Dover, Inc., a newly formed Maryland corporation, as lessee, and Banks executed the lease on behalf of the lessee. The bowling alley

opened on October 13, 1961. Although the lease was forwarded to Ambach, it was never executed on behalf of the landowners, who were, by October 13, 1961, Fred Wilson and Rodney Village Shopping Center, Inc., the intervening plaintiffs.

On July 9, 1962, the property was sold to Colt Realty, Inc., a corporation which was then owned fifty percent by Banks and fifty percent by one George Huber. The sale was subject to a first mortgage of the Presbyterian Ministers Fund with the intervening plaintiffs taking a second mortgage.

On November 27, 1963, the charter of Colt Lanes of Dover, Inc., was forfeited by proclamation of the Governor of Maryland. Banks and his wife were owners of eighty percent of all the stock. On June 8, 1964, Colt Realty, Inc., conveyed title to Harrison Realty, Inc., a corporation solely owned by Banks and his wife.

Financial problems ensued and the intervening plaintiffs brought foreclosure proceedings on the second mortgage and on November 23, 1964, at the foreclosure sale, the intervening plaintiffs reacquired title. Subsequent to the sale, the intervening plaintiffs and Banks entered into a written agreement, dated November 23, 1964, which purported to give Banks the right of possession of the property. In light of the inferences in the language in the opinions of Chancellor below, we find that the Chancellor held the agreement of November 23, 1964, was executed, this finding also being compelled by the overwhelming evidence on this factual question.

Banks defaulted in the agreement's requirement that he make certain payments by November 30, 1964, on the delinquencies of Colt Realty, Inc., to the Presbyterian Ministers Fund. Consequently, a letter was sent to him demanding delivery of possession on December 10, 1964. Brunswick signed a lease with the landowners on December 10, 1964, and took possession of the premises on the same day.

On December 18, 1964, Brunswick instituted this suit to enjoin any interference with its possessory rights and a temporary restraining order was entered. The proceedings below are not easily summarized but they provide some helpful background to the course of the litigation and the legal position of the parties in this appeal.

On February 4, 1965, an answer was filed which asserted that Colt Lanes of Dover, Inc., was in possession under a valid preexisting lease. By discovery, it was learned that the defendant was relying on the 1961 written lease, which was never executed by the landowners.

This led to plaintiff's first motion for summary judgment based on two grounds. First, there was no lease since the written document had not been executed. Second, the written lease relied upon was expressly subordinate to "any mortgage" made "at any time". The defendant's opposing brief filed May 4, 1966, argued: (1) the landowners were estopped to deny the existence of the lease; (2) the subordination clause was controlled by a covenant of quiet enjoyment; and (3) if the lease was not effective, there was nonetheless a demise under 25 Del.C. § 5101 which brought into play the notice provisions of 25 Del.C. § 5106 and § 5107. This brief, which was filed on May 4, 1966, was the first time that the defendant had ever indicated reliance on any demise other than the 1961 written lease. The legal positions asserted were formalized by subsequent pleading.

The Court below on September 29, 1967, held that the covenant of quiet enjoyment took precedence over the subordination clause but the estoppel issue involved a question of fact which could not be determined by summary judgment.

Thereafter, the plaintiff and intervening plaintiffs filed a second motion for summary judgment based on the contention that, under Maryland law, upon charter forfeiture, the assets devolve upon the directors. Messall v. Merlands Club, Inc., 244 Md. 18, 222 A.2d 627 (1966). The

1961 lease provided that, if any of the tenant's interest should devolve to another person, the landlord could terminate the lease without notice. Consequently, even if the estoppel argument of the defendant had merit, the plaintiffs argued termination was proper under the lease. On January 21, 1969, the Court below reserved judgment on the motion and directed a final hearing.

Trial was held. The Chancellor at trial found the 1961 lease was never executed by the landowners, Ambach and Wilson. Related holdings were also made. Even if the 1961 lease governed, the Chancellor found that the *Messall* rule governed and he granted Brunswick's motion to dismiss as to the alleged 1961 written lease although adhering to the view that the subordination clause was inferior to the covenant of quiet enjoyment. Other matters were reserved.

By letter dated November 16, 1970, the Court found that there was an oral demise, that it was not governed by the conditions expressed in the written lease on which the defendant had relied, and that the defendant as tenant was entitled to a month's notice pursuant to statute. Specifically, the Chancellor found that, as of December 10, 1964, the defendant was entitled to notice and that actual notice was given by the filing of this action by Brunswick and the restraining order issued by the Court on December 18, 1964. Therefore, the defendant Colt Lanes of Dover, Inc. was entitled to damages for a period from December 10, 1964, through January 17, 1967, for the wrongful deprivation of possession. Appeals followed.

The defendant appeals claiming statutory notice to quit has never been given and therefore it is entitled to damages from December 10, 1964, and continuing to this very date, a period in excess of six years. The plaintiff and intervening plaintiffs by cross appeal make two main arguments: (1) The defendant cannot claim greater rights under an oral lease than it had under the 1961 written lease upon which it relied, and if the defendant is bound by the terms of the 1961 written lease, then the tenancy was terminated by the mortgage foreclosure and the charter forfeiture. (2) Any of the defendant's possessory rights were terminated by the November 23, 1964, agreement by Banks.

The claim of the defendant for continuing damages since 1964, if the Court understands it correctly, is absurd.

■■■■ In the first place, the defendant fails to recognize any of the normal standards of damages. As a general rule, damages, upon breach of the covenant of quiet enjoyment, are the natural and direct consequences of the breach or an amount representing the difference between the actual value of the unexpired term and the rent reserved. 49 Am.Jur., Landlord and Tenant, § 349, p. 362; Ann. 62 A.L.R. 1311, s. 41 A.L.R.2d 1454. If a tenant at will is wrongfully evicted without notice, he may recover damages for a period extending to the time when the tenancy might have been terminated by the landlord, but for no longer. 52 C.J.S. Landlord and Tenant § 461(4) a, p. 341.

In Ashley v. Warner, 11 Gray 43, 77 Mass. 43 (1858), the Supreme Court of Massachusetts found, if a tenant at will, entitled to three months notice under the governing law, was wrongfully evicted, "[a]s * * * his tenancy might be determined by three months notice, his damages for the loss of the premises were limited to that time."

■■■ This is essentially the situation here where the unwritten demise without express term put the defendant in possession on a month-to-month basis, a tenancy from month-to-month being "in the nature of a tenancy at will." 51C C.J.S. Landlord and Tenant § 145, p. 437. The defendant can at a maximum be entitled to damages from the time of its eviction, if such it was, to the end of the next term of one month. See Ludwigsen v. Larsen, 227 Mich. 528, 198 N.W. 900 (1924).

In the second place, the statutory right to a notice to quit may be waived. 51C C.J.S. Landlord and Tenant § 150(7), p. 458; Hirzel v. Silker, 4 W.W.Harr. 588, 156 A. 360 (Supr.Ct.1930). It should be noted that, at the time of its original answer, in January 1965, the defendant made no claim to possession under an oral demise. The plaintiff relied solely on the 1961 lease with its fifteen year term and expressly agreed that it would not occupy the premises until the Court determined the matter of its possessory rights. It was not until May 4, 1966, after the defendant had been out of possession for almost seventeen months, that it resisted summary judgment through briefing by asserting an oral demise for the first time. The defendant, by asserting an inconsistent demise exclusively, by failing to assert a right to notice on a monthly lease and by agreeing to remain out of possession while its rights were being litigated, clearly waived any legitimate claim to a right to a notice to quit.

The appeal of the defendant is without merit.[1]

Turning to the two points raised by the cross appeal, the initial question is whether the defendant is bound by the terms of the 1961 written lease even though it was never executed by the intervening plaintiffs. The plaintiffs and intervening plaintiffs rely on Stewart v. Apel, 5 Houst. 189 (Super.Ct.1877) to support the proposition that a tenant claiming possession under a written lease not executed by the landlord is nevertheless bound by its terms. But the Court in the *Stewart* case expressly found that the demise under the written agreement was "continued by the consent of both parties". *Id.* at 5 Houst. 191. In this case, the Chancellor in effect concluded that there never was an agreement by the landlord to accept the terms of the 1961 lease and occupancy was not pursuant to such terms. This factual conclusion is justified by the record and the trial judge's decision is accepted by us under the normal legal standards of appellate review. Application of Delaware Racing Association, *supra*; Lank v. Steiner, *supra*.

The second basis for the cross appeal is more troublesome. The Chancellor properly recognized that the agreement of November 23, 1964, was a personal agreement by Banks, as appears from the face of the agreement. But the Chancellor evidently assumed that because the defendant corporation was not an express party to the agreement, its rights as tenant were necessarily unaffected by it. This is not correct. The argument that the defendant abandoned the tenancy, although perhaps not pinpointed as well below as on appeal, was properly in the case and should have been specifically considered.

In order to constitute an abandonment of a lease, which on acceptance by the landlord will constitute a surrender by operation of law, there must be an intent to abandon and conduct by which the intention is carried into effect. 51C C.J.S. Landlord and Tenant § 125(2), p. 399. The failure of a tenant with knowledge to object to a second lease by a landlord may, along with other circumstances, constitute an abandonment of the tenant's lease. Edwards v. Blissard, 440 S.W.2d 427 (Ct. Civ.App.Tex., 1969).[2]

---

1. We expressly withhold judgment on the Chancellor's conclusion that notice to quit was given by the filing of this action, a proposition which may be open to question.

2. The intervening plaintiffs may properly be considered landlords as of November 23, 1964, even though the purchase was not confirmed by sheriff's deed until December 10, 1964. The title of a purchaser at a sheriff's sale commences with the agreement of sale and is consummated by the sheriff's deed, which passes the legal estate and relates back to the day of sale. Miles v. Wilson, 3 Har. 382 (Super.Ct. 1841). "In any case of sale, the purchaser shall be entitled to rent for the premises sold from the day of sale * * *." 10 Del.C. § 4978(a). See also Stayton v. Morris, 4 Har. 224 (Super.Ct.1845).

In this case, insofar as the relationship of the parties in regard to the lease is concerned, the only person with whom the intervening plaintiffs had ever dealt was George Banks who was in effect Colt Lanes of Dover, Inc. Banks and his wife owned eighty percent of the stock. Banks was the sole spokesman for the corporation.

 It is the law of this State that when, in the usual course of the business of a corporation, an officer or agent has been allowed to manage certain of its affairs, and when this is known to the other party to the contract, the authority of the officer to act for the corporation is implied from the past conduct never challenged by the corporate officials. Hessler, Inc. v. Farrell, Del.Supr., 226 A.2d 708 (1967).

In this case, any separate possessory rights of the corporation were clearly abandoned by the failure of its only spokesman to object to the agreement of November 23, 1964, which granted separate possessory rights to George Banks. This holding is expressly limited to the facts of this case and the particular corporate circumstances present including the stock structure, the management history, and the charter forfeiture. Under these circumstances and in other similar situations, it is not a prerequisite to abandonment that the original tenant with knowledge be a party to the second lease or that the original tenant be expressly released. Douglas v. Schindler, 209 Cal. 616, 289 P. 625 (1930). The tenant's consent is implied from the tenant's acquiescence and both landlord and tenant are estopped from denying that surrender by operation of law has occurred. Jenkins v. Root, 269 Pa. 229, 112 A. 153 (1920).

The Chancellor evidently felt that the recognition of Colt Lanes of Dover, Inc. in the fifth paragraph of the agreement of November 23, 1964, supported the conclusion that the defendant corporation was not affected by the agreement. We think to the contrary. The fifth paragraph was a guarantee by Banks that Colt Lanes of Dover, Inc., would not "in anyway intervene, move, file or act to prevent confirmation of the sale of the premises by a writ of fi fa on November 23, 1964". If anything, this paragraph merely confirms the absolute control of Banks over Colt Lanes and thus supports the abandonment. Nor is it significant that Colt Lanes of Dover, Inc. made certain payments subsequent to the agreement of November 23, 1964, since such payments are consistent with Banks' possession pursuant to the agreement when it is read as a whole with its recognition of Banks' domination of several corporations.

We conclude that the agreement of November 23, 1964, constituted an abandonment of any possessory rights held by the defendant.

Pursuant to this opinion, the decision of the Chancellor is affirmed in part and reversed in part. The record is remanded with instructions to enter judgment for the plaintiff and the intervening plaintiffs.